

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-06-394-CR**

DANIEL PIKE ORAND, JR. A/K/A                                                     APPELLANT
DANNY TYRAIL BONDURANT

V.

THE STATE OF TEXAS                                                                      STATE

------------

## FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

------------

## **OPINION**

------------

### I. INTRODUCTION

The sole issue that we address in this appeal is whether the trial court erred by ruling that the almost twelve-year delay between the indictment and the arrest of Appellant Daniel Pike Orand, Jr. a/k/a Danny Tyrail Bondurant did not violate Bondurant's federal constitutional right to a speedy trial. For the reasons set forth below, we hold that the trial court erred by concluding that Bondurant was not prejudiced by the delay and that, consequently, the delay

did not violate Bondurant's speedy trial rights.  Accordingly, we reverse the trial court's judgment and render a judgment of acquittal.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The grand jury returned an indictment on June 9, 1994, charging Bondurant[1] with indecency with a child.  The offense report indicates that the incident occurred in June 1992 in the City of Lake Dallas in Denton County.[2] Bondurant was eighteen or nineteen years old at the time of the offense and is the uncle of the victim.  Although a warrant issued in 1994 for Bondurant's arrest, he did not learn of the indictment or warrant for almost twelve years. In February 2006, Bondurant learned of the warrant and immediately turned himself in to authorities.  In August 2006, over fourteen years after the date of the offense, Bondurant—who was by this time thirty-two years old—was tried and convicted.  Bondurant had filed a probation application, swearing that he had never before been convicted of a felony in the State of Texas or in any other state; however, the jury assessed his punishment at six-and-a-half years' confinement, and the trial court sentenced him accordingly.  After his trial,

---

[1] Bondurant was formerly known as Daniel Pike O'Rand II.

[2] No one reported the incident to police for approximately eleven months after it occurred, which explains almost one year of the two-year delay between the offense and the indictment.

2

Bondurant obtained appellate counsel who timely filed a motion in arrest of judgment and motion to dismiss the indictment, raising a violation of Bondurant's federal constitutional speedy trial rights.

The trial court conducted a hearing on Bondurant's motion. Lake Dallas Police Officer Ronald Newby, who was a criminal investigator assigned to Bondurant's case in 1993, testified at the hearing that the offense report in the present case indicates the victim's mother advised police on November 9, 1993, "that [Bondurant] was living with his mother in Springer, Oklahoma at an unknown house number on Main Street." Officer Newby confirmed that, prior to Bondurant's indictment, he had successfully telephoned Bondurant's mother's residence in Springer, Oklahoma, and had tried to make arrangements for Bondurant to "come down and give a statement." Officer Newby agreed that he knew Bondurant lived at home and that he had the telephone number to Bondurant's mother's residence.

Concerning the level of difficulty one would encounter in attempting to locate Bondurant, Officer Newby testified as follows:

> [Defense Appellate Counsel]: Can you explain to me how it would be possible for someone not to be able to find the defendant if he—if you already knew that he lived with his mother and you had the phone number? Would it be that difficult to go up there or to know where he lived on Main Street in Springer, Oklahoma?"

3

[Officer Newby]: Okay, based on enough information here, the defendant could have been tracked down.

[Defense Appellate Counsel]: How quickly if somebody was diligently trying to find him?

[Officer Newby]: Probably not very long at all.

Bondurant testified at the hearing that he was thirty-two years old and that since 1984 he has lived continuously with his mother in her home located at the corner of Main and Northwest streets in Springer, Oklahoma. He testified that he has a social security card and number in the name of Daniel Pike O'Rand. A copy of the card was offered into evidence. Bondurant testified that he has had the same social security number his entire life. He has maintained an Oklahoma driver's license, and when he received his license, his driver's license number matched his social security number. Bondurant was employed by VE Enterprise from 1994 to 1996; he was employed by Dollar General from 1996 to 2001; and the W-2 forms he received from his employers contained his social security number. While working at Dollar General, Bondurant fell down a flight of stairs at a Dollar General warehouse and became disabled; he currently receives social security disability benefits.

When Bondurant was old enough, he hired a lawyer and, in 1994, legally changed his name. Bondurant testified that he changed his name because his brothers and sisters told him that Daniel Pike O'Rand I was not really his father.

4

He said that he had been thinking about changing his name for a long time, several years, but he had to wait until he was an adult. Bondurant explained that he kept his first name and changed his last name to his mother's maiden name, Bondurant. Bondurant testified, and indeed the court order granting him a name change states, that he did "not seek to have his name changed for any illegal or fraudulent purpose or to delay or hinder creditors." Bondurant said that he did not know of the charge against him when he changed his name. Bondurant agreed that most people, if not everyone, that he knew in Springer, Oklahoma, including people in the sheriff's department who were friends of the family, knew that he had changed his name.

Finally, Bondurant's trial attorney testified at the hearing as follows, in part:

[Defense Appellate Counsel]: Did you ever consider - - in light of the lag of time between the date the indictment had been issued or returned by the grand jury and the time that the defendant was apprehended in February 2006, did it ever occur to you to file a motion to dismiss for denial of a speedy trial?

[Defense Trial Counsel]: No.

[Defense Appellate Counsel]: Under the Federal Constitution or otherwise?

[Defense Trial Counsel]: No.

[Defense Appellate Counsel]: Was your failure to do that or to consider that in any way part of any kind of guided or misguided

5

trial strategy where the defendant would somehow gain any tactical advantage by going ahead and being tried if you didn't?

[Defense Trial Counsel]: No. The issue never came up.

. . . .

[Defense Appellate Counsel]: What I am saying is did you ever tell the defendant or explain to him or inform him adequately or otherwise that he might have a speedy trial claim under the Sixth Amendment of the Federal Constitution?

[Defense Trial Counsel]: The subject was never discussed in any fashion at all. No.

[Defense Appellate Counsel]: Not at all?

[Defense Trial Counsel]: No.

At the conclusion of the hearing and after considering supplemental briefs filed by Bondurant and the State, the trial court signed an order denying Bondurant's speedy trial claim. The order states that the trial court made the following findings:

(a) The law enforcement agencies involved in the case on behalf of the State of Texas failed to exercise due diligence in the apprehension of the Defendant post-indictment.

(b) Despite the period of delay between the charging of the Defendant by indictment and his ultimate apprehension, there was no harm to the Defendant.

Bondurant timely perfected this appeal.

6

## III. RIGHT TO SPEEDY TRIAL

The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial. *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002). The United States Supreme Court has stated, "On its face, the Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." *Id*. (quoting *Doggett v. U.S.*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)). Thus, in *Barker v. Wingo*, the United States Supreme Court qualified the literal sweep of the provision by analyzing the constitutional question in terms of four specific factors:

1) whether the delay before trial was uncommonly long;

2) whether the government or the criminal defendant is more to blame for the delay;

3) whether in due course, the defendant asserted his right to a speedy trial; and

4) whether the defendant suffered prejudice as the delay's result.

407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). Under *Barker*, courts must analyze federal constitutional speedy trial claims by first weighing the strength of each of the above factors and then balancing their relative weights in light

7

of the conduct of both the prosecution and the defendant. *Zamorano*, 84 S.W.3d at 648. None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; instead, all must be considered together along with any other relevant circumstances. *Id.* No one factor possesses "talismanic qualities"; thus, courts must "engage in a difficult and sensitive balancing process in each individual case." *Id*. (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2182).

## IV. STANDARD OF REVIEW

In reviewing the trial court's ruling on Bondurant's federal constitutional speedy trial claims, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components. *Id.*

## V. ANALYSIS OF THE *BARKER* FACTORS

### A.    Length of Delay

The length of delay between the initial charge and the trial acts as a triggering mechanism, and unless the length of this delay is presumptively prejudicial, courts need not inquire into or examine the other three speedy trial factors. *Id.* Depending on the nature of the charges, a postaccusation delay of about one year is "presumptively prejudicial." *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2691. If the accused shows that the interval between accusation

8

and trial has crossed the threshold dividing "ordinary" from "presumptively prejudicial" delay, under the length-of-delay factor the court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. *Zamorano*, 84 S.W.3d at 649 (quoting *Doggett*, 505 U.S. at 652, 112 S. Ct. at 2690-91). This second inquiry is significant to the speedy trial analysis because the "presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.*

The State here concedes that the eleven-year, eight-month delay between the indictment and the apprehension of Bondurant "was amply sufficient to trigger a speedy-trial inquiry." The State also concedes that "since the delay stretched far beyond the minimum needed to trigger the inquiry," "this factor weighs heavily in favor of Appellant." We agree. We have located no case in Texas or United States Supreme Court jurisprudence dealing with a delay as long or longer than the eleven-year, eight-month delay presented here. *See, e.g., Doggett*, 505 U.S. at 657-58, 112 S. Ct. at 2693-94 (granting relief based on an eight-and-a-half-year delay between Doggett's indictment and arrest); *Zamorano,* 84 S.W.3d at 649 (reversing trial and appellate courts' failure to grant relief based on a two-year, ten-month delay between appellant's arrest and the hearing on his speedy trial motion); *State v. Perkins*, 911 S.W.2d 548, 551 (Tex. App.—Fort Worth 1995, no pet.) (affirming relief granted based

9

on two-year, nine-month delay between indictment and the speedy trial hearing); *see also State v. Smith*, 66 S.W.3d 483, 489-90 (Tex. App.—Tyler 2001, no pet.) (affirming relief granted based on five-year delay between date of charging instrument and resolution of the case); *State v. Rangel*, 980 S.W.2d 840, 843-45 (Tex. App.—San Antonio 1998, no pet.) (affirming relief granted based on twenty-month delay between defendant's arrest and the speedy trial hearing).

The eleven-year, eight-month delay here is not only presumptively prejudicial, it stretches far, far beyond (approximately twelve times beyond) the approximately twelve-month minimum delay necessary to trigger judicial examination of a speedy trial claim. Consequently, the length of the delay here weighs extremely heavily against the State and in favor of Bondurant.

**B.**      **Reasons for the Delay**

Here, the trial court made a fact finding concerning the second *Barker* factor. The trial court found that the State failed to exercise due diligence[3] in Bondurant's apprehension. We review the trial court's factual determination of negligence by the government with considerable deference. *See Doggett*, 505

---

[3] We perceive no distinction, and indeed the State does not argue that one exists, between a "failed to exercise due diligence" finding and a "negligence" finding.

U.S. at 652, 112 S. Ct. at 2691 (explaining that as for the second *Barker* criterion, "we review the trial court's determinations of [governmental] negligence with considerable deference"); *Zamorano*, 84 S.W.3d at 648-49 (explaining that we apply an abuse of discretion standard to the trial court's resolution of factual issues in a speedy trial challenge).

The record before us amply supports the trial court's finding. The evidence in the record before us shows that the State did nothing to attempt to apprehend Bondurant after an indictment was returned and a warrant issued for his arrest.[4] The State knew where Bondurant was living, had his phone number, and had confirmed, prior to Bondurant's indictment, his location at this residence and his telephone number. Officer Newby conceded that Bondurant could have been located in a very short period of time; he said, however, that once a warrant was issued, the Denton County Sheriff's office was supposed to serve the warrant. Thus, the State offered virtually no explanation for its failure for eleven years and eight months to make any attempt to apprehend

---

[4] The trial court stated on the record at the conclusion of the hearing:

I don't recall any reason whatsoever being given that they didn't go and arrest the guy that would make sense to any half-ass reasonable person. They just didn't try to go get him. He lived in Springer, Oklahoma for ten years. Springer, Oklahoma ain't got dip people in it. They called his mother up there before he was indicted. He lived with his mother.

11

Bondurant. The trial court's finding of negligence stands. *See Doggett*, 505 U.S. at 653, 112 S. Ct. at 2691 (noting on facts less compelling than the facts presented here that the trial court's finding of negligence by the government stood).

In determining the weight to be assigned this factor in this case, we note that different weights are given to different reasons for delay espoused by the government. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. *Id.*, 92 S. Ct. at 2192. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered because the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. *Id.*, 92 S. Ct. at 2192. Finally, a valid reason, such as a missing witness, should serve to justify delay. *Id.*, 92 S. Ct. at 2192.

Here, the State provided no explanation at all for its failure to make even a single effort to apprehend Bondurant. In the absence of any explanation, the delay weighs against the State. And the weight we assign to governmental negligence compounds over time as the presumption of evidentiary prejudice grows. *Doggett*, 505 U.S. at 657, 112 S. Ct. at 2693. Here, there was much

12

compounding over the eleven-year, eight-month delay. This factor weighs very, very heavily against the State and in favor of Bondurant.

### C.    Assertion of the Right

Bondurant did not assert his speedy trial right until after a judgment was entered against him. He raised it in a motion in arrest of judgment and to dismiss the indictment as violative of his federal constitutional speedy trial rights. *See* TEX. R. APP. P. 22.

The nature of the speedy trial right makes it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. *Barker*, 407 U.S. at 527, 92 S. Ct. at 2190. The right to a speedy trial is constitutionally guaranteed and, as such, is not to be honored only for the vigilant and the knowledgeable. *Id*. at n.27, 92 S. Ct. at 2190 (quoting *Hodges v. United States*, 408 F.2d 543, 551 (8th Cir. 1969)). Consequently, the United States Supreme Court has expressly rejected the proposition that a defendant who fails to demand a speedy trial has forever waived his right. *Id.* at 528, 92 S. Ct. at 2191 (saying, "We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right."). This does not mean, however, that a defendant has no responsibility to assert his

13

right. *Id.*, 92 S. Ct. at 2191. The better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. *Id.*

Here, Bondurant testified that he was unaware of the indictment against him or of the warrant out for his arrest until he learned of them in February 2006 and immediately turned himself in to authorities in Springer, Oklahoma. This testimony was unchallenged. The State offered no testimony or evidence that Bondurant had been informed by anyone of the indictment or of the warrant prior to February 2006. Thus, Bondurant is not to be taxed for invoking his speedy trial right only after his arrest. *See Doggett*, 505 U.S. at 653-54, 112 S. Ct. at 2691 (explaining that when the defendant did not know of the indictment or warrant he could not be taxed for invoking his speedy trial right only after his arrest).

The State nonetheless contends that Bondurant failed to timely assert his speedy trial rights because he did not raise them for six months, until after judgment was entered against him.[5] But the crux of Bondurant's speedy trial

[5] We have not included the six-month time period between Bondurant's apprehension and his trial in the computation of the eleven-year, eight-month delay. An eleven-year, eight-month delay existed between the indictment and Bondurant's apprehension, and an additional six-month delay existed between Bondurant's apprehension and his trial.

14

complaint is not the six-month delay between his arrest and his trial; it is the eleven-year, eight-month delay between when he was indicted and when he learned of the charge and turned himself in to authorities. Bondurant raised this speedy trial issue in a timely filed postjudgment motion, and the issue was presented to the trial court for a ruling. *See* TEX. R. APP. P. 22. Thus, Bondurant asserted and properly preserved any error in the trial court's ruling on this speedy trial issue. *See, e.g.*, TEX. R. APP. P. 33.1(a).

Moreover, Bondurant's trial counsel testified that he never informed Bondurant of the possibility that a claim existed for the violation of Bondurant's speedy trial rights. Thus, the record before us will not support an inference that Bondurant somehow knowingly, retroactively, waived his speedy trial rights concerning the eleven-year, eight-month delay. *See, e.g., Barker*, 407 U.S. at 528, 92 S. Ct. at 2191 (rejecting the demand-waiver rule). Although Bondurant could have asserted his speedy trial rights possibly six months earlier, the failure to assert them at the earliest opportunity does not trigger a waiver of the right in the absence of evidence that a waiver was intended. *See Doggett*, 505 U.S. at 654, 112 S. Ct. at 2691.

Nor does the record show that Bondurant acquiesced to the eleven-year, eight-month delay between his indictment and his arrest; Bondurant testified that he did not know of the charge against him. *See Smith,* 66 S.W.3d at 491

15

(affirming speedy trial relief granted by trial court even though "[i]n the present case, Appellee never specifically requested a speedy trial," only a dismissal of the charges); *accord Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (presuming prejudice from length of delay but holding that presumed prejudice was extenuated by defendant's long-time acquiescence to the delay)*; Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (holding that when the appellant knew of charges against him and failed to assert a speedy trial right for three-and-a-half years, was represented by counsel at all relevant times, and no question was raised as to the competency of such counsel, the assertion-of-the-right *Barker* factor weighed against him). We hold that Bondurant timely asserted his speedy trial issue via his motion in arrest of judgment and motion to dismiss the indictment which he filed in the trial court. *See* Tex. R. App. P. 22.

This factor weighs at least slightly against the State and in favor of Bondurant.

### D. Prejudice Caused by the Delay

The final factor of "prejudice" must be assessed in light of the interests the speedy trial right was intended to protect. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. Those interests are (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to

16

limit the possibility the defense will be impaired. *Id.*, 92 S. Ct. at 2193. Because Bondurant was not confined and was unaware of the charges against him or of the warrant that had issued for his arrest, the first two interests are not at issue here. Consequently, we focus on the third interest, the possibility that Bondurant's defense was impaired.

Impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown. *Id.*, 92 S. Ct. at 2193. The possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence is the most serious interest that the right to speedy trial protects because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Doggett*, 505 U.S. at 654, 112 S. Ct at 2692. Affirmative evidence of particularized prejudice is not essential to every speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *Id.* at 655, 112 S. Ct. at 2693. And the presumption of prejudice grows and intensifies over time. *Id*. at 656, 112 S. Ct. at 2693. However, the presumption of prejudice to a defendant's ability to defend himself can be "extenuated . . . by the defendant's acquiescence" in the delay. *Id.* at 658, 112 S. Ct. 2694.

17

A brief review of the *Doggett* case reveals that it is controlling here. In *Doggett*, eight-and-a-half years elapsed between Doggett's indictment and his arrest. *Id*. at 648, 112 S. Ct. at 2689. Doggett did not know of the charges against him, left the country for two years, then returned to the United States and passed unhindered through customs, settled in Virgina, married, earned a college degree, found a steady job, lived openly under his name, and stayed within the law. *Id*. at 649, 112 S. Ct. at 2689. Six years after Doggett returned to the United States, he was arrested. *Id.* at 650, 112 S. Ct. at 2690. After his arrest, Doggett raised a speedy trial claim. *Id.*, 112 S. Ct. at 2690. The trial court found that the government was negligent in its efforts to apprehend Doggett during the six years after he returned to the United States but denied his speedy trial claim because it found that Doggett had not been prejudiced. *Id.* at 650, 112 S. Ct. at 2690. A split panel of the court of appeals affirmed. *United States v. Doggett*, 906 F.2d 573, 582 (11th Cir. 1990).

The United States Supreme Court reversed the judgment of the trial court and of the court of appeals and found that Doggett's speedy trial rights had been violated by the six-year delay in his arrest after he returned to the United States. *Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694. Concerning the

18

prejudice prong of the *Barker* analysis, the *Doggett* Court explained that Doggett was not required to show prejudice:

> When the government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, . . . and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.

*Id.*, 112 S. Ct. at 2694.

The State here argued in the trial court that Bondurant's claim of prejudice was "laughable" because he claimed that he was not at the house when the incident with his niece occurred. Thus, according to the State, it was a typical he-said, she-said case, and the length of the delay did not impact either side's strategy. But the State overlooks the fact that had Bondurant been brought to trial sooner, perhaps he would have had some memory of exactly where he was on the day of the incident and could have identified witnesses to support his claim that he was not present at the time of the incident. Bondurant cannot remember where he was or whom he was with on the date of the incident, which occurred fourteen years and two months before his trial.[6] Thus, he cannot identify potential witnesses, nor make any showing

---

[6] To reiterate, the offense occured in June 1992; Bondurant was indicted in June 1994, learned of the charge in February 2006, turned himself in to authorities in February 2006, and was tried in August 2006.

of specific prejudice; time's erosion of such exculpatory evidence and testimony can rarely be shown. *See Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. Additionally, due to the lapse of time, Bondurant was deprived of the ability to effectively cross-examine the State's witnesses; any word uttered or any fact or detail provided by the State's witness was simply unimpeachable. The passage of time rendered the credibility of the State's witnesses concrete, exempt from the testing fire of a cross-examination planned after detailed witness interviews and extensive defense investigation. Although Bondurant points to no specific affirmative evidence of particularized prejudice, the extreme and excessive length of the delay here presumptively compromised the reliability of his trial in ways that neither party can prove or even identify. *See Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693. And the presumption of prejudice intensified and grew with each passing year of delay. *See id*. at 656, 112 S. Ct. at 2693. The State's argument that the case boiled down to a he-said, she-said scenario may be correct, but it does not persuasively rebut the mushrooming presumption of prejudice because it is undeniable that the excessive delay between Bondurant's indictment and his arrest forever precluded Bondurant from proving that what he said was true and what she said was not.

20

Just as the trial court in *Doggett* erroneously found that Doggett had not been prejudiced by the delay between his indictment and arrest, the trial court here likewise erred. The delay in *Doggett* was merely six times as long as that generally sufficient to trigger judicial review. *Id.* at 658, 112 S. Ct. at 2693. The delay here was twice as long as the delay in *Doggett* and was twelve times as long as that generally sufficient to trigger judicial review. *See id.*, 112 S. Ct. at 2693. And like the delay in *Doggett*, the delay here was neither extenuated (Bondurant did not acquiesce to the delay) nor rebutted (the State offered no explanation for the delay). *See Doggett,* 505 U.S. at 658, 112 S. Ct. at 2694.

Thus, in summary, the fourth *Barker* prejudice factor weighs against the State and in favor of Bondurant.

### E. Balancing

Having analyzed the four *Barker* factors, we now balance them. *Accord Zamorano*, 84 S.W.3d at 654-55. The eleven-year, eight-month delay between Bondurant's indictment and his apprehension weighs extremely heavily against the State and in favor of Bondurant. Added to the weight of the first factor is the compounding weight given to the second factor, the reason for the delay. No reason whatsoever for the delay was offered by the State. Instead, Bondurant put on evidence that even prior to his indictment—so for the duration of the entire eleven-year, eight-month delay—the authorities possessed

21

knowledge of his location and a phone number where he could be reached. Additionally, the trial court specifically found that the State failed to exercise due diligence by making no efforts to apprehend Bondurant for eleven years and eight months. The weight given to the second factor, compounding each year during the eleven-year, eight-month delay, renders the weight given to this factor extremely, almost insurmountably, heavy. The onerous weight given to the second factor added together with the weight given to the first factor, tips the scales so far in favor of Bondurant and against the State that it is doubtful the weight of these two factors in Bondurant's favor could be offset by the remaining two factors even if they weighed in favor of the State, which they do not.

But, nonetheless, we add the remaining two factors to the balance too. The third factor likewise weighs at least slightly against the State. As recognized by the United States Supreme Court, the defendant has no obligation to bring himself to trial; the burden rests upon the government, and here the State failed to discharge its obligation for almost twelve years. Bondurant did assert his speedy trial rights in the trial court, and this assertion sufficiently preserved the issue. Thus, adding the slight weight of this factor to Bondurant's side of the scales, the immense weight of the now three factors stacked on Bondurant's side is so heavy that, no matter what weight is given

22

to the remaining fourth prejudice factor weighing against the State, it cannot cause the scales to tip any further in Bondurant's favor.

Nonetheless, we add the fourth prejudice factor to the balancing analysis. Although Bondurant did not show any specific prejudice, we have held that here the length of the delay itself is sufficient to establish strongly presumed prejudice. Because of the delay, fourteen years and two months elapsed between the date of the offense and the date of Bondurant's trial. The eleven-year, eight-month delay attributable to the negligence of the State presumptively prejudiced Bondurant, and as discussed above, the presumption of prejudice grew with each passing year. The State has not persuasively rebutted the by now very weighty presumption that Bondurant was prejudiced by the delay. Thus, the fourth and final factor weighs against the State and in favor of Bondurant. Adding it to the other three factors weighing against the State and in favor of Bondurant, the scales are fully weighted in Bondurant's favor.

Having weighed each of the *Barker* factors and balanced their respective weights in light of the conduct of both the State and Bondurant, we hold that Bondurant was denied his right to a speedy trial under the Sixth Amendment to the United States Constitution. We therefore sustain Bondurant's sole issue.

## VI. CONCLUSION

Having sustained Bondurant's sole issue, we reverse the trial court's judgment and render a judgment of acquittal.

SUE WALKER
JUSTICE

PANEL B:   LIVINGSTON, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED: April 10, 2008

24