

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00105-CR

ADRIAN NATHAN SALAZAR                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Adrian Nathan Salazar appeals his conviction for failing to comply with a sex offender registration requirement.[2]  In one point, he argues that the trial court erred by denying his motion in arrest of judgment, in which he contended that he had not received a speedy trial.  We affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Code Crim. Proc. Ann. art. 62.102(a) (Vernon 2006).

## Background Facts

In September 2007, a grand jury indicted appellant with failing to comply with a sex offender registration requirement. The indictment alleged that appellant had a 2001 conviction for indecency with a child, which required him to register as a sex offender, and that he did not provide the Fort Worth Police Department with timely notice that he was changing his address. The indictment also contained a repeat offender notice, which alleged that appellant had previously been convicted of deadly conduct by discharging a firearm at a habitation.

In October 2008, appellant filed several pretrial motions relating to, among other matters, discovery of the State's evidence and potential witnesses. After the State filed some business records in April 2009, the parties appeared at a status conference on November 4, 2009, and the trial court scheduled trial to begin approximately two weeks later. On November 13, 2009, however, appellant pled guilty, and the State waived the repeat offender notice.[3] Appellant

---

[3]On appeal, appellant refers to his guilty plea as a "negotiated open plea." Appellant's plea paperwork states that he pled guilty to a third-degree felony. Generally, "if it is shown on the trial of a . . . third-degree felony that the defendant has been once before convicted of a felony, on conviction he shall be punished for a second-degree felony." Tex. Penal Code Ann. § 12.42(a)(3) (Vernon Supp. 2010). The State's agreement to waive the repeat offender notice in conjunction with appellant's guilty plea capped the amount of confinement that appellant could have received at ten years (the third-degree felony maximum) instead of twenty years (the second-degree felony maximum). *See id.* §§ 12.33–.34 (Vernon Supp. 2010), .42(a)(3). Thus, the guilty plea qualifies as a plea bargain under Texas Rule of Appellate Procedure 25.2. *See* Tex. R. App. P.

2

received written admonishments, expressly waived many constitutional and statutory rights, and entered a judicial confession.

The trial court ordered the preparation of a presentence investigation report, and appellant made several objections to the report. After a sentencing hearing in January 2010, at which appellant testified and elicited testimony from his father-in-law, the trial court sentenced appellant to six years' confinement. The trial court signed its judgment of conviction and a certification of appellant's right to appeal that, without limitation, gave him permission to appeal.[4]

The next month, appellant filed a motion in arrest of judgment[5] to assert that his right to a speedy trial had been violated because "nearly twenty-eight (28) months passed from the date [appellant] was arrested until the trial court heard evidence and sentenced [appellant]." Appellant asked the trial court to dismiss his indictment with prejudice. He conceded that he did not assert his right to a speedy trial until after the trial court convicted and sentenced him, but

---

25.2(a)(2); *Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003); *Carender v. State*, 155 S.W.3d 929, 931 (Tex. App.—Dallas 2005, no pet.).

[4]The certification states that the case was "a plea-bargain case, but the trial court has given permission to appeal, and the defendant has the right of appeal." *See* Tex. R. App. P. 25.2(a)(2)(B).

[5]*See* Tex. R. App. P. 22.1.

3

he relied on one of our previous opinions to contend that his assertion of the right was still timely.[6] He also signed a declaration stating,

> [M]y perceived failure, if any, to more promptly complain of the denial of my right to a speedy trial was not the result of any design or strategic decision on the part of my trial counsel, or the result of my making a "knowing" decision to acquiesce in the prior delay between my arrest, return of indictment, and my trial. Rather, this failure, if any, was apparently an inadvertent failure on the part of my trial counsel . . . . If I had known of my right to file a motion to dismiss based on speedy trial grounds, I would have insisted that such a motion be prepared and filed by my attorney. But for [trial counsel's] failure to inform me of said right, I further declare that I would have never pled guilty . . . .

Appellant presented the motion in arrest of judgment to the trial court on the day he filed it. The trial court questioned whether it had jurisdiction to consider the motion and said that it was "not going to be granting any relief" on it. The court did not expressly grant or deny the motion, so the motion was deemed denied.[7] Appellant filed notice of this appeal.

## Our Jurisdiction

In its only response to appellant's contention that the trial court erred by denying his motion in arrest of judgment, the State contends that we lack jurisdiction because appellant entered a plea bargain and cannot establish that he is appealing matters raised and ruled on before trial or that he received the

---

[6]*See Orand v. State*, 254 S.W.3d 560, 568, 572 (Tex. App.—Fort Worth 2008, pet. ref'd) (holding that a defendant's speedy trial rights were violated although he asserted them after his conviction).

[7]*See* Tex. R. App. P. 22.4(b).

4

trial court's specific permission to appeal his speedy trial point. *See* Tex. R. App. P. 25.2(a)(2) (limiting appeals after a defendant enters a plea bargain); *Turley v. State*, 242 S.W.3d 178, 180 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.) (dismissing an issue because the defendant did not receive permission to appeal his complaint about the trial court's alleged refusal to hold a hearing on a motion for new trial). The State asserts that because "the record in this case does not show that Appellant had permission to appeal any actions of the trial court which occurred post-trial, his claim should be dismissed for lack of jurisdiction."

But the State has not cited authority in which a court dismissed an issue or an appeal arising from a plea-bargained case when the trial court gave unlimited, global permission to appeal but did not give specific permission to appeal the issue complained about.[8] Instead, the State cites authority in which the trial court did not grant any permission to appeal. *See, e.g.*, *Turley*, 242 S.W.3d at 180; *Estrada v. State*, 149 S.W.3d 280, 282, 285 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (op. on reh'g). We have not found precedential authority addressing whether an appellant may appeal matters that are raised for the first time in the trial court after the court has given permission to appeal. However, because the trial court's certification in this case unambiguously grants appellant permission to appeal, the trial court verbally granted a right to appeal at the end

---

[8]We note that rule 25.2(a)(2)(B) uses general terms; it does not state that a defendant may appeal only after getting the trial court's permission to appeal the specific issues that the defendant plans to raise in the appeal. *See* Tex. R. App. P. 25.2(a)(2)(B).

5

of the sentencing hearing, and the trial court became aware of appellant's desire to appeal his speedy trial point and did not thereafter amend the certification to state that he could not do so, we hold that appellant has the right to appeal the point under rule 25.2(a)(2)(B). We will proceed to address the merits of the point.[9]

## Appellant's Right to a Speedy Trial

Appellant succinctly argues that the trial court erred by denying his motion in arrest of judgment, which was based on his claim that he did not receive a speedy trial. As part of his point, appellant seems to contend that the trial court erred by not granting an evidentiary hearing on the motion. But when appellant's counsel presented the motion, he told the court, "[I]t's up to you whether you give us a hearing or not." The trial judge told him that he had an "absolute right" to "place something on the record" and asked him whether there was "any relief that [he was] specifically seeking." Appellant did not respond by asking for an evidentiary hearing. Later, the judge said, "You were allowed to make a record. Is there anything else that needs to be made?" Appellant's counsel responded, "No, sir, not at this time." Further, we cannot conclude that the trial court's statement that it was not going to grant "relief" toward the end of the presentment

---

[9]The State also contends that appellant waived his right to appeal as part of his plea bargain. But "the trial court's subsequent handwritten permission to appeal controls over a defendant's previous waiver of the right to appeal, allowing the defendant to appeal despite the boilerplate waiver." *Willis v. State*, 121 S.W.3d 400, 403 (Tex. Crim. App. 2003); *see Perez v. State*, 129 S.W.3d 282, 288 (Tex. App.—Corpus Christi 2004, no pet.).

hearing signified that it was refusing to conduct an evidentiary hearing on appellant's motion.

Thus, we hold that the record does not support appellant's contention that the trial court refused to hold an evidentiary hearing, and we conclude that to the extent that his point rests on the lack of an evidentiary hearing, he has forfeited the point by not obtaining a ruling on whether he could have such a hearing. *See* Tex. R. App. P. 33.1(a)(2); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009); *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *Lee v. State*, 186 S.W.3d 649, 658 (Tex. App.—Dallas 2006, pet. ref'd) ("To the extent appellant complains on appeal of the trial court's requirement that the evidence be submitted by affidavit [in a motion for new trial hearing], we conclude the complaint was not preserved for appellate review because appellant did not object to that requirement."); *Adams v. State*, 132 S.W.3d 701, 702 (Tex. App.—Amarillo 2004, no pet.) (mem. op.) (holding that the defendant forfeited his complaint that the trial court denied a motion to suppress without holding a hearing when the defendant did not complain in the trial court about the lack of a hearing); *Bouldin v. State*, 100 S.W.3d 355, 355–56 (Tex. App.—San Antonio 2002, no pet.) (holding that a defendant's complaint that he should have been permitted to present evidence during a motion for new trial hearing was forfeited because the defendant did not object to the truncated nature of the hearing). Also, if there was particular evidence that appellant wanted to offer on the speedy trial point, he could have submitted an offer of proof to show what the

evidence would have established.[10] *See Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).

We therefore deny appellant's request that we "abate this appeal and remand said case to the trial court with instructions to consider Appellant's motion in arrest of judgment." As explained above, the motion has already been denied. *See* Tex. R. App. P. 22.4(b). Although appellant's only specifically requested relief is abatement and remand, and although appellant's brief does not contain significant analysis of his speedy trial claim, in the interest of justice, we will determine the merits of that claim on the record that has been made available to us.

In reviewing a trial court's decision to deny an appellant's speedy trial claim, we generally apply a bifurcated standard of review, comprising an abuse of discretion standard for the factual components and a de novo standard for the legal components of the trial court's decision. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). The Sixth Amendment to the United States Constitution guarantees an accused's right to a speedy trial. U.S. Const. amend VI; *Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *Orand*, 254 S.W.3d at 565. In addition, the Texas constitution guarantees the accused's right to a speedy trial. Tex. Const. art. I, § 10; *Zamorano*, 84 S.W.3d at 647.

---

[10]We also note that appellant's brief does not disclose any evidence he wishes to present that would impact his speedy trial claim but that is not in the record.

8

"On its face, the [federal] Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." *Zamorano*, 84 S.W.3d at 647 (quoting *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992)); *Orand*, 254 S.W.3d at 565. Thus, in *Barker v. Wingo*, the Supreme Court qualified the literal sweep of the provision by analyzing the constitutional question in terms of four specific factors: (1) whether the delay before trial was uncommonly long; (2) whether the government or the defendant is more to blame for the delay; (3) whether in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as the delay's result. 407 U.S. 514, 530–32, 92 S. Ct. 2182, 2192–93 (1972).[11]

Under *Barker*, we must analyze federal constitutional speedy trial claims by first weighing the strength of each of the above factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Zamorano*, 84 S.W.3d at 648; *Munoz*, 991 S.W.2d at 821; *Orand*, 254 S.W.3d at 565. None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial; instead, all factors must be considered together along with any other relevant circumstances.

---

[11]Although the "Texas constitutional speedy trial right exists independently of the federal guarantee," courts analyze the federal and state rights using the same balancing considerations. *Zamorano*, 84 S.W.3d at 648; *see Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App.), *cert. denied*, 506 U.S. 942 (1992); *Murphy v. State*, 280 S.W.3d 445, 450 (Tex. App.—Fort Worth 2009, pet. ref'd).

*Zamorano*, 84 S.W.3d at 648; *Orand*, 254 S.W.3d at 565. No one factor possesses "talismanic qualities"; thus, courts must "engage in a difficult and sensitive balancing process" in each individual case. *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193); *Orand*, 254 S.W.3d at 565–66.

We must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). "While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Murphy*, 280 S.W.3d at 450. "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 450–51.

**Length of delay**

"The *Barker* test is triggered by a delay that is unreasonable enough to be 'presumptively prejudicial.' There is no set time element that triggers the analysis, but [the court of criminal appeals has] held that a delay of four months is not sufficient while a seventeen-month delay is." *Cantu*, 253 S.W.3d at 281; *see Murphy*, 280 S.W.3d at 451; *Orand*, 254 S.W.3d at 566 ("The length of delay between the initial charge and the trial acts as a triggering mechanism, and unless the length of this delay is presumptively prejudicial, courts need not

10

inquire into or examine the other three speedy trial factors."). The length of delay that can be tolerated for an ordinary, simple crime is considerably less than for a more serious, complex charge. *Zamorano*, 84 S.W.3d at 649. "Presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Murphy*, 280 S.W.3d at 452.

The length of delay between appellant's September 2007 indictment and his November 2009 guilty plea, a time span of more than two years, is presumptively prejudicial. *See Cantu*, 253 S.W.3d at 281; *Murphy*, 280 S.W.3d at 451. Thus, the delay triggers our analysis of the remaining *Barker* factors. *See Murphy*, 280 S.W.3d at 452; *Orand*, 254 S.W.3d at 566.

**Reasons for the delay**

The record does not establish particular reasons for the delay between appellant's indictment and his plea. In October 2007, a month after the grand jury indicted appellant, he signed a document to express his choice to hire counsel. The State announced that it was ready for trial in January 2008. Appellant's retained counsel made an appearance in February 2008.[12] According to the clerk's record filed in this appeal, the next official action in the case occurred in October 2008, when appellant filed several pretrial motions. In

---

[12]Thus, the record indicates that appellant possibly searched for counsel to retain between October 2007 and February 2008.

11

April 2009, the State filed some business records, and in October 2009, appellant's case was transferred to the trial court from another district court.

It is impossible to determine why (apparently, as based on this record) nothing happened in appellant's case for long stretches of time in 2008 and 2009.[13] In *Murphy*, although no evidence was presented about the reason for inactivity in a four-year period, we noted that the "primary burden of insuring that cases are brought to trial rests on the courts and prosecution." 280 S.W.3d at 453; *see Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994) ("The State has the initial burden of justifying a lengthy delay."), *cert. denied*, 513 U.S. 1192 (1995). We therefore counted the four-year period as a factor against the State, but we explained that "because there was no evidence that the State was engaging in purposeful dilatory tactics, it [did] not count heavily against the State." *Murphy*, 280 S.W.3d at 453*; see also Zamorano*, 84 S.W.3d at 649 (stating that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while a "more neutral reason . . . should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with

---

[13]In appellant's motion in arrest of judgment, he stated that he rejected plea offers "from February 22, 2008, to August 11, 2008." To the extent that the six-month delay from February 2008 to August 2008 was caused by plea negotiations, such negotiations are a "valid reason for the delay and should not be weighed against the prosecution." *Munoz*, 991 S.W.2d at 824. Appellant's motion also stated that the trial court had five settings for trial in 2008 and 2009; it did not explain why the trial did not commence on those dates.

12

the government rather than with the defendant") (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. 2192).

The State did not respond to appellant's motion in arrest of judgment to show any reason for the delay in bringing this case to trial. Thus, like in *Murphy*, we will count the unexplained delay as a factor in favor of appellant's speedy trial claim, but only slightly. *Murphy*, 280 S.W.3d at 453; *see Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

**Appellant's assertion of his speedy trial rights**

As the court of criminal appeals explained in *Cantu*,

> The nature of the speedy-trial right makes "it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants." The defendant has no duty to bring himself to trial; that is the State's duty. But a defendant does have the responsibility to assert his right to a speedy trial. Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them. "The more serious the deprivation, the more likely a defendant is to complain." Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one. If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure. Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal.

253 S.W.3d at 282–83 (citations and footnotes omitted).

Here, appellant did not really make any request for a speedy trial. Rather, by the time appellant invoked his right to a speedy trial, appellant's plea, conviction, and sentencing (to six years' confinement, which is on the higher end of the third-degree felony range) had already occurred.[14] Appellant has not provided cogent reasons for his failure to seek a speedy trial before entering his guilty plea, nor has he established that he really wanted one instead of a dismissal. His declaration in the trial court stated, "If I had known of my right *to file a motion to dismiss* based on speedy trial grounds, I would have insisted that such a motion be prepared and filed by my attorney." [Emphasis added.]

In *Murphy*, Murphy did not assert her right to a speedy trial until a motion to dismiss that was filed ninety-two months after her arrest. 280 S.W.3d at 454. Murphy then filed another motion to dismiss less than a year after filing the first one. *Id.* She also testified that she asked her attorney several times why her trial had not started. *Id.* Because Murphy "did not assert her right to a speedy trial for a lengthy period of time, and then once she did assert the right it was in the form of a motion to dismiss the charges against her, we conclude[d] that this

---

[14]Appellant declared in the trial court that his delay in asserting his speedy trial right was not the result of a strategic decision. In general, we would be reluctant to issue an opinion that would encourage a defendant who plans on pleading guilty without a punishment recommendation by the State, rather than on taking a case to trial, to gamble by waiting until the trial court makes its sentencing decision and then, if the decision is not favorable to the defendant, seeking acquittal on the basis that a trial did not occur quickly enough.

factor weigh[ed] against Murphy and against her claim that she was denied her right to a speedy trial." *Id.*

Appellant did much less, and waited until a later point in the proceedings (after his guilty plea and sentencing hearing), to assert his right to a speedy trial than Murphy did. We hold that this factor weighs heavily against appellant. *See Dragoo*, 96 S.W.3d at 314–15 (deciding that a defendant's quiet acquiescence to a longer than three-year delay weighed heavily in favor of the State); *Emery*, 881 S.W.2d at 709 ("Appellant's sparse and delinquent assertions of his right to a speedy trial weigh in favor of the State's position."); *Schenekl v. State*, 996 S.W.2d 305, 313 (Tex. App.—Fort Worth 1999), *aff'd*, 30 S.W.3d 412 (Tex. Crim. App. 2000); *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.) ("Appellant's request for a dismissal instead of a speedy trial weakens his claim because it shows a desire to have no trial instead of a speedy trial. Therefore, the third *Barker* factor weighed against Appellant.") (citations omitted); *cf. Zamorano*, 84 S.W.3d at 647, 651 (holding that a late assertion of the right to a speedy trial did not weigh against the defendant because the defendant filed a second attempt to seek a speedy trial after the trial court denied his initial motion, and both assertions of the right occurred before the defendant's no contest plea); *Orand*, 254 S.W.3d at 568–69 (concluding that although the defendant waited until after his conviction from a contested trial to assert his right to a speedy trial, that fact did not weigh against him because the crux of his speedy trial complaint was not the delay between his arrest and his

15

trial but a nearly twelve-year delay between when he was indicted and when he learned of the charge and turned himself in to authorities).

**Prejudice**

The rights to a speedy trial protect three interests of the defendant: freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense. *Cantu*, 253 S.W.3d at 285; *see Clarke v. State*, 928 S.W.2d 709, 715 (Tex. App.—Fort Worth 1996, pet. ref'd) (op. on reh'g). "It is the defendant's burden to make a prima facie showing of prejudice. Once the defendant does so, it is the State's 'obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.'" *Clarke*, 928 S.W.2d at 716 (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

In his motion in arrest of judgment, appellant asserted that he had suffered "oppressive bond conditions . . . for over two (2) years," oppressive incarceration "at the present time" (after he had already been convicted and sentenced), and "substantial anxiety and concern." Appellant did not provide any particular facts to support his otherwise conclusory claims about the bond conditions or his anxiety; his failure to do so weighs against his claim of prejudice. *See State v. Smith*, 76 S.W.3d 541, 552 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding that bare, conclusory assertions are insufficient to show significant prejudice); *see also Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003)

16

("[A]ppellant offered no evidence to the trial court that the delay had caused him any unusual anxiety or concern, *i.e.*, any anxiety or concern beyond the level normally associated with being charged with [a] crime."); *Murphy*, 280 S.W.3d at 455 (minimizing the impact of generalized expressions of anxiety and concern that amount to little more than a nominal showing of prejudice). And appellant's claim about oppressive bond conditions for over two years indicates that he was not confined during that time and shows that one of the three interests served by speedy trial rights—freedom from oppressive pretrial incarceration—weighs in favor of the State.[15]

Of the forms of prejudice, the most serious is impairment to the accused's defense. *Dragoo*, 96 S.W.3d at 315. Appellant has not alleged that his defense was prejudiced. It would be difficult for him to do so because he judicially confessed to committing "each and every act" alleged in the indictment, which simply stated that he had failed to properly notify the Fort Worth Police Department before he changed addresses. During the sentencing hearing, appellant again admitted his guilt; he testified that he knew the rules of reporting as a sex offender and that he lived part-time with his girlfriend in Mesquite

---

[15]The trial court's judgment shows that appellant received credit for being incarcerated for two days in September 2007 and one day in January 2010. Because he received credit for three days of confinement after ultimately being convicted, that confinement was not oppressive. *See Starks v. State*, 266 S.W.3d 605, 612 (Tex. App.—El Paso 2008, no pet.) (holding that a defendant's twenty-five-month pretrial incarceration was not oppressive when the defendant received credit on his sentence for time served and ultimately pleaded guilty).

17

without notifying authorities as required. And we cannot find any indication from the record that the delay between appellant's indictment and plea could have increased his sentence.

**Balancing the factors**

In weighing all four of the *Barker* factors, we conclude that appellant's failure to timely assert his speedy trial rights pervades and predominates the limited prejudice he has alleged. *See Santallan v. State*, 922 S.W.2d 306, 309 (Tex. App.—Fort Worth 1996, pet. ref'd); *see also Harris*, 827 S.W.2d at 957 (holding that, among other facts, a defendant's failure to invoke his constitutional speedy trial right until trial and the lack of evidence of any particularized prejudice to him showed that the "balance [was] clearly in favor of the State"). The delay between appellant's indictment and guilty plea was presumptively prejudicial, and the lack of a reason for the delay weighs slightly in favor of appellant. But the other two factors weigh much heavier against him. Appellant never truly expressed his desire for a speedy trial. Instead, he requested dismissal and acquittal after he was convicted and was apparently dissatisfied with the sentence he received. The record seems to preclude the possibility that appellant's defense was prejudiced by the delay. Also, he did not assert oppressive pretrial confinement and did not provide facts supporting his claim of anxiety.

After balancing the *Barker* factors, we hold that there is no error in the deemed denial of appellant's motion in arrest of judgment on the basis that he did not receive a speedy trial.  We overrule his sole point.

## Conclusion

Having overruled appellant's only point, we affirm the trial court's judgment.


                                           TERRIE LIVINGSTON
                                           CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 31, 2011