COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-420-CR

                                        NO.
2-06-421-CR

 

 

PATRICE MURPHY                                                               APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM THE 235TH
DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  INTRODUCTION








The question this court is asked to answer is
whether the trial court erred by denying Appellant Patrice Murphy=s motion
to dismiss based on her claim that her right to a speedy trial was violated.[1]  Because Murphy did little to seek a speedy
trial and because she suffered nominal personal or defense prejudice from a
lengthy delay that was largely attributable to the State, we will affirm.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 1998, Cooke County Sheriff=s Deputy
Bobby Faglie was on patrol when he saw a green Jeep Cherokee leave a rest stop
near the 489 mile marker on northbound Interstate 35.  As the Jeep entered the highway, Faglie
noticed that it failed to signal.  As
Faglie watched, the Jeep crossed the center stripe between the northbound
lanes, then veered back over the yellow stripe onto the shoulder.  Faglie followed the Jeep for approximately a
half mile.  Believing that the driver=s
faculties were impaired, he initiated a stop.

The driver, Murphy, did not have a driver=s
license with her and identified herself with an Illinois traffic citation.  The Jeep was a rental vehicle rented to
Tarita James, who was riding as a passenger. 
When Faglie inquired where they were going and where they had been,
Murphy responded that they had been sleeping at the rest stop and were still
groggy, and that they were going to St. Louis, Missouri, after a two-week stay
in Dallas, visiting James=s aunt.








Officer Faglie had Murphy exit the Jeep and asked
her if the vehicle had insurance.  When
Murphy responded that she did not have insurance for the Jeep, Faglie went to
the passenger side of the vehicle and made the same inquiry to James.  She handed Faglie a rental agreement, issued
in James=s name
from St. Louis International Airport, which showed that the Jeep was due back
two days before, on March 23, 1998. 
James told Faglie that they were in Dallas for two days and could not
find her aunt=s house.

Faglie determined that Murphy was not intoxicated
and issued a warning citation for failure to indicate a lane change and failure
to maintain a single lane of traffic.  He
gave a warning citation to Murphy and then asked James for consent to search the
vehicle; she consented both verbally and in writing.

During his initial search of the vehicle, Faglie
found two purses on the center console of the vehicle.  In the purses, he found a combined total of
$6,636, and in James=s purse he found five small bags
of cocaine.  Faglie handcuffed James and
Murphy and placed them under arrest, while his partner read James and Murphy
their Miranda rights.








When Faglie and his partner opened the hatchback
of the vehicle, they found several shopping bags and nine suitcases, seven of
which contained eighty-two insulation-wrapped packages totaling over four
hundred pounds of ninety-one percent pure cocaine and a forty-eight percent
mixture of amphetamine.  Murphy and James
were indicted for the offenses of possession of cocaine over 400 grams and
possession of amphetamines over 400 grams. 
On January 20, 2000, the State filed a notice to consolidate Murphy=s and
James=s cases;
however, on August 9, 2000, the State withdrew its notice to consolidate the
cases and proceeded against Murphy and James separately.

James was initially found guilty and sentenced to
two life sentences by a jury.  James appealed
to this court.  See James v. State,
102 S.W.3d 162, 167 (Tex. App.CFort
Worth 2003, pet. ref=d).  Although this court held that Faglie had
reasonable suspicion to stop Murphy, and that Faglie had both written and
verbal consent to search the vehicle, we reversed James=s
convictions on January 9, 2003, holding that James had been harmed by the
improper admission of a prior conviction. 
Id. at 172B73, 182.  This court remanded James=s case
back to the trial court.  Id. at
182.  Afterwards, on February 3, 2005,
James entered into a plea agreement with the State.  The terms of the agreement were that James
would plead nolo contendere to both charges, agree to be sentenced to twenty
years=
incarceration, and agree to testify against Murphy.








The clerk=s record
shows a flurry of activity pertaining to Murphy=s case
by both Murphy and the State between her May 14, 1998[2]
indictment and August 2000.  During this
period, Murphy filed her own motions for continuance on July 07, 1998, and on
December 03, 1998.  Murphy also agreed to
the State=s motions for continuance filed
April 08, 1999, June 14, 1999, June 23, 1999, and February 18, 2000.  Following these motions, the trial court set
an August 21, 2000 trial date.

The record then shows no activity concerning
Murphy=s cases
for nearly four years.  But on June 09,
2004, the record shows that the State requested a jury trial setting.  The trial court set a trial date of November
1, 2004.  The trial court also issued an
order setting a September 9, 2004 hearing concerning the sufficiency of Murphy=s
bond.  The day before the hearing was to
be conducted, Murphy, citing medical reasons, filed a motion for continuance.  On October 29, 2004, again citing medical
reasons, Murphy filed a motion for continuance concerning the November 1, 2004
trial date.  Murphy=s trial
was reset for February 3, 2005.  Murphy
again filed a motion for continuance.  In
this motion, Murphy=s attorney alleged a scheduling
conflict.  On October 28, 2005, Murphy
waived her right to a jury trial and her trial was eventually reset for
November 1, 2005.








On November 1, 2005, Murphy appeared for trial
with counsel and filed a motion to dismiss asserting that she had been deprived
of her right to a speedy trial.  She also
filed an application for probation. 
Murphy, who was now pregnant, entered open pleas of guilty for both
charges and the trial court found her guilty. 
The trial court set the punishment hearing for February 17, 2006Ca date
that allowed Murphy to travel back to Chicago, where she had been living for
the previous five years, and have her baby. 
Murphy was sentenced to twenty years=
incarceration.  On March 20, 2006, Murphy
filed a motion for new trial, claiming that her pleas were entered into
involuntarily and that she had received ineffective assistance of counsel.  Without specifying on which grounds Murphy=s motion
was granted, the trial court granted a new trial.  Murphy=s case
was then set for jury trial on July 17, 2006. 
On July 10, 2006, with new counsel, Murphy again requested another
continuance and also filed a motion to dismiss, claiming the State failed to
provide her a speedy trial.  The trial
court granted the continuance and scheduled a hearing on the motion to
dismiss.  After the hearing, the trial
court denied Murphy=s motion.  On September 20, 2006, a jury found Murphy
guilty of both charges.  Two days later,
the trial court assessed punishment at twenty years=
incarceration for each charge, with both sentences to run concurrently.  This appeal followed.

                                           III.  DISCUSSION

In her sole point, Murphy argues that the trial
court erred by denying her motion to dismiss. Citing both the United States and
Texas Constitutions, Murphy specifically complains that her right to a speedy
trial was violated.








A.     The
Right to a Speedy Trial








The Sixth Amendment to the United States
Constitution and article 1, section 10 of the Texas Constitution guarantee an
accused the right to a speedy trial.  See
U.S. Const. amend. VI; Tex. Const. art. I, ' 10;
see also Zamorano v. State, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); Orand
v. State, 254 S.W.3d 560, 565 (Tex. App.CFort
Worth 2008, pet. ref=d).  Texas courts analyze claims of a denial of
this right, both under the federal and state constitutions, the same.  See Harris v. State, 827 S.W.2d 949,
956 (Tex. Crim. App. 1992).  The right
attaches once a person becomes an Aaccused,@ that
is, once one is arrested or charged.  United
States v. Marion, 404 U.S. 307, 321, 92 S. Ct. 455, 461 (1971) (A[I]t is
either a formal indictment or information or else the actual restraints imposed
by arrest and holding to answer a criminal charge that engage the particular
protections of the speedy‑trial provision of the Sixth Amendment.@).  Supreme Court precedent requires state courts
to analyze federal constitutional speedy trial claims Aon an ad
hoc basis@ by weighing and then balancing
the four Barker v. Wingo factors: 1) length of the delay, 2) reason for
the delay, 3) assertion of the right, and 4) prejudice to the accused.  407 U.S. 514, 530, 92 S. Ct. 2182, 2192
(1972); State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); Orand,
254 S.W.3d at 565.  While the State has
the burden of justifying the length of delay, the defendant has the burden of
proving the assertion of the right and showing prejudice.  See Barker, 407 U.S. at 531, 92 S. Ct.
at 2192; see also Ex parte McKenzie, 491 S.W.2d 122, 123 (Tex. Crim.
App. 1973) (stating that Aif an accused made a prima facie
showing of prejudice, the State must carry the obligation of proving that the
accused suffered no serious prejudice beyond that which ensued from the
ordinary and inevitable delay@).  The defendant=s burden
of proof on the latter two factors Avaries
inversely@ with the State=s degree
of culpability for the delay.  Robinson
v. Whitley, 2 F.3d 562, 570 (5th Cir. 1993) (citing Doggett v. United
States, 505 U.S. 647, 657, 112 S. Ct. 2686, 2693 (1992)).  Thus, the greater the State=s bad
faith or official negligence and the longer its actions delay a trial, the less
a defendant must show actual prejudice or prove diligence in asserting his
right to a speedy trial.  Cantu v.
State, 253 S.W.3d 273, 280B81 (Tex.
Crim. App. 2008).








The Barker test is triggered by a delay
that is unreasonable enough to be Apresumptively
prejudicial.@ 
Doggett, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1
(1992).  There is no set time element
that triggers the analysis, but the court of criminal appeals has held that a
delay of four months is not sufficient while a seventeen‑month delay is.  Pete v. State, 501 S.W.2d 683, 687 (Tex.
Crim. App. 1973) (AAppellant herein was tried [for
rape] approximately four months after he was bench warranted from the Texas
Department of Corrections.  It is our
opinion that this short period of time could in no way be construed as >presumptively
prejudicial.=A); Phillips
v. State, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) (AAlthough
there is no precise length of delay which irrefutably constitutes a violation
of the right to a speedy trial in all cases, . . . a seventeen month
delay is sufficient to raise the issue.@); see
also Doggett, 505 U.S. at 651, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (noting
that courts have generally found post-accusation delay Apresumptively
prejudicial at least as it approaches one year@).  Once the Barker test is triggered,
courts must analyze the speedy trial claim by first weighing the strength of
each of the Barker factors and then balancing their relative weights in
light of Athe conduct of both the prosecution
and the defendant.@ 
Zamorano, 84 S.W.3d at 648 (quoting Barker, 407 U.S. at
530, 92 S. Ct. at 2192).  No one factor
is either a necessary or sufficient condition to the finding of a deprivation
of the speedy trial right.  Id.  Instead, the four factors are related and
must be considered together along with any other relevant circumstances.  Barker, 407 U.S. at 530, 92 S. Ct. at
2192.  As no factor possesses Atalismanic
qualities,@ courts must engage Ain a
difficult and sensitive balancing process@ in each
individual case.  Zamorano, 84
S.W.3d at 648 (quoting Barker, 407 U.S. at 533, 92 S. Ct. at 2192).








Dismissal of the charging instrument with
prejudice is mandated only upon a finding that an accused=s speedy
trial right was actually violated.  See
Strunk v. United States, 412 U.S. 434, 440, 93 S. Ct. 2260, 2271
(1973).  Because dismissal of the charges
is a radical remedy, a wooden application of the Barker factors would
infringe upon the societal interest in trying people accused of crime, rather
than granting them immunization because of legal error.  Cantu, 253 S.W.3d at 281.  Thus, courts must apply the Barker
balancing test with common sense and sensitivity to ensure that charges are
dismissed only when the evidence shows that a defendant=s actual
and asserted interest in a speedy trial has been infringed.  See Barker, 407 U.S. at 534B35, 92
S. Ct. at 2192 (rejecting defendant=s claim
of a speedy trial violation despite a five-year delay when the record strongly
indicated that the defendant did not actually want a speedy trial).  The constitutional right is that of a speedy
trial, not dismissal of the charges.  Cantu,
253 S.W.3d at 281.

The amorphous quality of the right also leads to
the unsatisfactorily severe remedy of dismissal of the indictment when the
right has been deprived.  Id.  This is indeed a serious consequence because
it means that a defendant who may be guilty of a serious crime will go free,
without having been tried.  Id.  Such a remedy is more serious than an
exclusionary rule or a reversal for a new trial, but it is the only possible
remedy.  Id.








B.     Standard
of Review

In reviewing the trial court=s ruling
on an appellant=s speedy trial claim, we apply a
bifurcated standard of review: an abuse of discretion standard for the factual
components, and a de novo standard for the legal components.  Zamorano, 84 S.W.3d at 648.  Review of the individual Barker
factors necessarily involves fact determinations and legal conclusions, but the
balancing test as a whole is a purely legal question.  Cantu, 253 S.W.3d at 281.

Under this standard, we defer not only to a trial
judge=s
resolution of disputed facts, but also to the trial judge=s right
to draw reasonable inferences from those facts. 
Id. at 282.  In assessing
the evidence at a speedy trial hearing, the trial judge may completely
disregard a witness=s testimony, based on
credibility and demeanor evaluations, even if that testimony is uncontroverted.  Id. 
The trial judge may disbelieve any evidence so long as there is a
reasonable and articulable basis for doing so. 
Id.  And all of the
evidence must be viewed in the light most favorable to the trial judge=s
ultimate ruling.  Id.  Because Murphy lost in the trial court on her
speedy trial claim, we presume that the trial judge resolved any disputed fact
issues in the State=s favor, and we defer to the
implied findings of fact that the record supports.  Id. at 282.








C.     Analysis
of the Barker Factors

1.     Length of Delay

The length of delay is a Atriggering
mechanism@ for analysis of the other Barker
factors.  Barker, 407 U.S. at 530B32, 92
S. Ct. at 2192B93; Orand, 254 S.W.3d at
566.  AUntil
there is some delay which is presumptively prejudicial, there is no necessity
for inquiry into the other [Barker] factors that go into the balance.@  Barker, 407 U.S. at 530B32, 92
S. Ct. at 2192B93.  Presumptive prejudice does not necessarily
indicate a statistical probability of prejudice; it simply marks the point at
which courts deem the delay unreasonable enough to trigger the Barker
inquiry.  Doggett, 505 U.S. at 652
n.1, 112 S. Ct. 2686, 2691 n.1; Munoz, 991 S.W.2d at 821B21.  This Barker factor Ais
actually a double enquiry.@  Doggett, 505 U.S. at 651, 112 S. Ct.
at 2690.

ASimply to trigger a
speedy trial analysis, an accused must allege that the interval between
accusation and trial has crossed the threshold dividing ordinary from >presumptively prejudicial= delay, (citation
omitted), since, by definition, he cannot complain that the government has
denied him a >speedy= trial if it has, in
fact, prosecuted his case with customary promptness.  If the accused makes this showing, the court
must then consider, as one factor among several, the extent to which the delay
stretches beyond the bare minimum needed to trigger judicial examination of the
claim.@ Id.








The State here concedes that Athe
initial trial of Murphy was not speedy.@  We agree. 
Specifically, we consider the almost four-year inactivity between August
2000 and June 2004 regarding Murphy=s case
sufficient to trigger consideration of the other Barker factors.

2.     Reasons
for the Delay








Under Barker, Adifferent
weights should be assigned to different reasons@ for the
delay.  Barker, 407 U.S. at 531,
92 S. Ct. at 2192.  This factor seeks to
ensure that courts not simply concentrate on the sheer passage of time without
taking into account the reasons underlying the delay.  See, e.g., Rashad v. Walsh, 300 F.3d
27, 34 (1st Cir. 2002).  The inquiry into
causation involves a sliding scale: deliberately dilatory tactics must be
weighed more heavily against the State than periods of delay resulting from
negligence.  Barker, 407 U.S. at
531, 92 S. Ct. at 2192.  Furthermore,
valid reasons for delay should not be weighed against the State.  See Munoz, 991 S.W.2d at
824.  And delay which is attributable in
whole or in part to the defendant can weigh against the defendant and may even
constitute a waiver of a speedy trial claim. 
See Barker, 407 U.S. at 529, 92 S. Ct. at 2191B92
(noting that delay attributable solely to defendant Amay be
given effect under standard waiver doctrine@); see
also Dickey v. Florida, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574 (1970)
(Brennan, J., concurring) (defendant may be Adisentitled
to the speedy‑trial safeguard in the case of a delay for which he has, or
shares, responsibility@); United States v. Anderson,
902 F.2d 1105, 1110 (2nd Cir.), cert. denied, 498 U.S. 867 (1990)
(holding that there was no speedy trial violation where, among other things,
defense counsel agreed to delays and continuances for purposes of plea
negotiations).

Although the period of time between Murphy=s arrest
in March 1998 and her eventual trial in November 2005 exceeded seven years,
this court perceives three distinct time periods: 1) the time period between
her arrest and the setting of an August 21, 2000 trial date, 2) the period of
inactivity between this trial date and the State=s
request for a jury trial in June 2004, and 3) the time period between that
request and her entering pleas of guilty on November 1, 2005.

Here, the State offered evidence at the motion to
dismiss hearing that Murphy was the first to request multiple continuances and
also agreed to multiple continuances with the State during the first period of
time.  There was also ample evidence that
Murphy had requested numerous continuances during the third time period.  The trial court could have reasonably
concluded that Murphy was responsible for both of these periods of delay.








The second time period, however, is quite a
different matter.  No evidence was
presented as to why there was no activity during this nearly four-year
period.  The primary burden of insuring
that cases are brought to trial rests on the courts and prosecution.  Barker, 407 U.S. at 527, 92 S. Ct. at
2190.  With this burden in mind, the
trial court could have only reasonably concluded negligence on the part of the
State to prosecute the case.  This period
of time must be counted against the State. 
But because there was no evidence that the State was engaging in
purposeful dilatory tactics, it does not count heavily against the State.  See id.  In sum, the State did not justify most of the
lengthy delay in this case. 
Consequently, this factor tilts in favor of Murphy=s claim
that she was denied a speedy trial.

3.     Assertion
of the Right

We next consider the extent to which Murphy
affirmatively sought a speedy trial.  Barker,
407 U.S. at 531B32, S. Ct. at 2192.  The nature of the speedy trial right makes Ait
impossible to pinpoint a precise time in the process when the right must be
asserted or waived, but that fact does not argue for placing the burden of
protecting the right solely on defendants.@  Id. at 527, 92 S. Ct. at 2193.  Even though it is the State=s duty
to bring the defendant to trial, it is the defendant=s duty
to assert the right to a speedy trial.  Id. at 527B28, 92
S. Ct. at 2193 (AWe think the better rule is that
the defendant=s assertion of or failure to
assert his right to a speedy trial is one of the factors to be considered in an
inquiry into the deprivation of the right.@).








Whether and how a defendant asserts this right is
closely related to the other three factors because the strength of the
defendant=s efforts will be shaped by
them.  Id. at 531, 92 S. Ct. at
2196.  AThe more
serious the deprivation, the more likely a defendant is to complain.@  Id. 
Thus, the defendant=s
assertion of the right to a speedy trialCor the
failure to assert itCis entitled to strong
evidentiary weight in determining whether the defendant is being deprived of
the right.  Id. at 531B32, 92
S. Ct. at 2196.  Filing for a dismissal
instead of a speedy trial generally weakens a speedy trial claim because it
shows a desire to have no trial instead of a speedy one.  Cantu, 253 S.W.3d at 283.  If a defendant fails to first seek a speedy
trial before seeking dismissal of the charges, the defendant should provide
cogent reasons for this failure.  Id.;
see also Parkerson v. State, 942 S.W.2d 789, 791 (Tex. App.CFort
Worth 1997, no pet.)








Repeated requests for a speedy trial weigh
heavily in favor of the defendant, while the failure to make such requests
supports an inference that the defendant does not really want a trial, only a
dismissal.  Barker, 407 U.S. at
534B36, 92
S. Ct. 2192B95 (A[B]arring
extraordinary circumstances, we would be reluctant indeed to rule that a
defendant was denied this constitutional right on a record that strongly
indicates . . . that the defendant did not want a speedy trial.@); see
also Harris, 827 S.W.2d at 957 (A[A]ppellant=s lack
of a timely demand for a speedy trial indicates strongly that he did not really
want a speedy trial.@); United States v. Palmer,
537 F.2d 1287, 1288 (5th Cir. 1976) (A[T]he
point at which the defendant asserts his right is important because it may
reflect the seriousness of the personal prejudice he is experiencing@).

In Palmer, the Fifth Circuit held that
because the defendant @first asserted his right thirty
months after his arrest, which was one month after he first received
notification of his indictment, and he complained at that time only of the 22‑month
pre‑indictment delay,@ his Asilence
during the entire pre‑indictment period work[ed] against him because it
suggest[ed] that any hardships he suffered were either minimal or caused by
other factors.@ 
Palmer, 537 F.2d at 1288.

Likewise, in this case, Murphy did not assert her
right to a speedy trial until she filed her motion to dismiss on November 1,
2005, ninety-two months after she had been arrested.  She again filed a motion to dismiss, citing
violation of her speedy trial right, July 10, 2006.  This motion was filed more than nineteen
months after she had sought and gained multiple continuances regarding her
November 1, 2004 trial date.








Even though Murphy testified that she had asked
her attorney several times why her trial had not commenced, the trial court
could have reasonably concluded that Murphy=s
silence during the period between her arrest and these motions indicated that
Murphy was not, in reality, asserting her right to a speedy trial, but rather
wanted only a dismissal.  Because Murphy
did not assert her right to a speedy trial for a lengthy period of time, and
then once she did assert the right it was in the form of a motion to dismiss
the charges against her, we conclude that this factor weights against Murphy
and against her claim that she was denied her right to a speedy trial.

4.     Prejudice

Because Apretrial
delay is often both inevitable and wholly justifiable,@ the fourth
Barker factor examines whether and to what extent the delay has
prejudiced the defendant.  Barker,
407 U.S. at 532, 92 S. Ct. at 2193; Doggett, 505 U.S. at 656, 112 S. Ct.
at 2692.  When a court analyzes the
prejudice to the defendant, it must do so in light of the defendant=s
interests that the speedy trial right was designed to protect: (1) to prevent
oppressive pretrial incarceration, (2) to minimize the accused=s
anxiety and concern, and (3) to limit the possibility that the accused=s
defense will be impaired.  See Dragoo
v. State, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (citing Barker,
407 U.S. at 532, 92 S. Ct. at 2193).








Impairment of one=s
defense is the most difficult form of speedy trial prejudice to prove because
time=s
erosion of exculpatory evidence and testimony can rarely be shown.  Barker, 407 U.S. at 532, 92 S. Ct. at
2193; Dragoo, 96 S.W.3d at 315. 
The possibility that the accused=s
defense will be impaired by dimming memories and loss of exculpatory evidence
is the most serious interest that the right to speedy trial protects because
the inability of a defendant to adequately prepare his case skews the fairness
of the entire system.  Doggett,
505 U.S. at 654, 112 S. Ct. at 2692. 
Affirmative evidence of particularized prejudice is not essential to
every speedy trial claim because excessive delay presumptively compromises the
reliability of a trial in ways that neither party can prove or even
identify.  Id. at 655, 112 S. Ct.
at 2693.  And the presumption of
prejudice grows and intensifies over time. 
Id. at 656, 112 S. Ct. at 2693. 
But the presumption of prejudice to a defendant=s
ability to defend himself can be Aextenuated
. . . by the defendant=s
acquiescence@ in the delay.  Id. at 658, 112 S. Ct. 2694.








Here, except for the first few months after her
arrest, Murphy was out on bond at all relevant times.  Thus, pretrial incarceration serves as a
minimal factor in determining whether she suffered prejudice.  And even though Murphy testified that over
the last few years it seemed she lived her life Ain jail
. . . in the real world@ because
of her concerns of when she would need to come to Texas in order to participate
in her trial, we conclude that this is nothing more than Ageneralized
expressions of anxiety and concern [that] amount to little more than a nominal
showing of prejudice.@ 
Goodrum v. Quarterman, 547 F.3d 249, 263 (5th Cir. 2008).  Finally, even presuming that the length of
delay impaired Murphy=s defense, that prejudice, as
well, was minimal.  While Murphy
testified that she had difficulty Aremember[ing]
a lot of things,@ she never testified how this
might impair her defense at trial. 
Murphy does not claim that witnesses have died or memories, other than
her own, have diminished due to the delays relating to her case.  In short, on this record, the trial court
could have reasonably concluded that Murphy failed to demonstrate any actual
prejudice or that any presumed prejudice was minimal.  This factor weighs against finding Murphy=s speedy
trial right was violated.

5.     Balancing
the Factors








Having addressed the Barker factors, we
must now balance them.  Weighing in favor
of finding that Murphy=s speedy trial right was
violated are the facts that the delay here was excessive and that the State
offered no valid reason for the lion=s share
of the delay in this caseCthe nearly four-year gap of
inactivity pertaining to these charges. 
Weighing against finding a violation of Murphy=s speedy
trial right is the fact that she failed to assert her right until more than six
years after her indictment, and then, she asserted that right in the form of a
motion to dismiss and on the eve of trialCindicating
that she did not really want a speedy trial, but wanted only a dismissal of the
charges.  Further, there is a lack of any
substantial personal or defense prejudice resulting from the delay.  We hold that the weight of these factors,
balanced together, supports the trial judge=s ruling
to deny Murphy=s motion to dismiss and that
there was no violation of her right to a speedy trial.  See Barker, 407 U.S. at 534, 92 S. Ct.
at 2194 (holding that there was no speedy trial right violation because
defendant was not seriously prejudiced by five‑year delay between arrest
and trial and that defendant did not really want a speedy trial, rather, a
dismissal of charges); Dragoo, 96 S.W.3d at 315 (holding that there was
no speedy trial right violation because defendant demonstrated no serious
prejudice by more than three-year delay between arrest and trial and waited
until just before trial to assert his right to a speedy trial); Phipps v.
State, 630 S.W.2d 942, 946 (Tex. Crim. App. 1982) (holding that there was
no speedy trial right violation where defendant demonstrated no prejudice by
four‑year delay between arrest and trial and defendant waited until one month
before trial to assert his right).  We
overrule Murphy=s sole point.








                                          IV.  CONCLUSION

Having overruled Murphy=s sole
point, we affirm the trial court=s
judgment.

DIXON
W. HOLMAN

JUSTICE

 

PANEL:  GARDNER and WALKER, JJ.; and DIXON W. HOLMAN,
J. (Senior Justice, Retired, Sitting by Assignment).

 

WALKER, J. concurs
without opinion.

 

PUBLISH

 

DELIVERED:  February 5, 2009











[1]See U.S. Const. amend. VI;
Tex. Const. art. I, ' 10.





[2]Murphy was indicted for
possession of cocaine on May 14, 1998, and possession of amphetamine on June
25, 1998.