

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NOS. 2-08-004-CR**
**2-08-005-CR**

JOHN ALFRED CHRISTMAS                APPELLANT

V.

THE STATE OF TEXAS                  STATE

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant John Alfred Christmas was convicted of possession of a prohibited weapon and six counts of aggravated assault. In two points, Appellant argues that the trial court erred by denying his motion to

---

[1] *See* Tex. R. App. P. 47.4.

dismiss — claiming violation of both his federal and state right to a speedy trial.[2] We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events underlying this case, Jean Gregory lived on a small parcel of land near Sunset, Texas. Appellant was her live-in boyfriend. Gregory lived in a double-wide mobile home. She provided room and board to a couple — Yale Clark II and Jennifer Welsh — and their two children in a single-wide trailer in exchange for labor and assistance. On the day in question, December 13, 2005, two other children were visiting — Clark's children from a prior marriage.

During the early evening of December 13, by all accounts, Appellant and Clark got into a heated argument while unloading Appellant's vehicle. Clark and Welsh attribute the argument to Appellant's having been intoxicated. Appellant testified that the argument escalated from his having confronted Clark about Clark's having possibly struck one of the children in the face. At this point, Clark and Welsh gathered the four children into their car and attempted to leave the premises.

---

[2] *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10.

There is no dispute that during their attempt to leave, Appellant fired a handgun at the vehicle, successfully hitting it twice. Clark and Welsh testified that Appellant had brandished his gun and fired at them before they reached the gate to exit the property. Appellant testified that he fired several shots at the vehicle in self-defense because he had been pinned under the gate during his attempts to prevent Clark and Welsh from leaving with the children—concerned Clark might harm them.

Shortly after the vehicle made it to the highway, it broke down. Welsh ran to a nearby house, called the police, and reported what had occurred. The next day, Montague County law enforcement executed a search warrant at Appellant's and Gregory's residence. The officers seized a .380 handgun and a sawed-off shotgun. Appellant was charged with possession of a prohibited weapon—the shotgun—and with six counts of aggravated assault. Appellant was arrested the same day the search warrant was executed, December 14, 2005.

Indictments for these offenses were not returned until June 12, 2006. During the time between his arrest and indictment, and up until and after Appellant's jury trial, Appellant remained in jail. The trial court appointed Appellant an attorney on June 27, 2006. Despite having court appointed counsel, Appellant filed his own hand written motion to dismiss all charges on

3

July 10, 2006, claiming the State had failed to return indictments within 180 days.[3]

Appellant waived arraignment and entered a written plea of not guilty to each charge on July 24, 2006.[4] On August 16, 2006, the trial court denied Appellant's motion to dismiss regarding whether the indictment was brought timely. A pretrial hearing was set for September 25, 2006. Appellant, announcing not ready on September 25, joined the State in agreeing to reset the pretrial hearing for November 27, 2006. Without the aid of his court appointed attorney, Appellant again filed several pro se motions on October 9, 2007, none of which raised the issue of his speedy trial right. Appellant's trial was ultimately set for and began on November 6, 2007. Appellant filed another

---

[3] Although Appellant's motion does not cite a specific statute, at the hearing addressing this motion, all parties refer to Texas Code of Criminal Procedure 32.01. *See* Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon 2006) ("When a defendant has been detained in custody . . . the [charges shall be dismissed] . . . if indictment . . . [is] not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180th day after the date of commitment or admission to bail, whichever date is later."). The trial court determined that the indictment had been properly presented against Appellant "before the last day of the next term of the court." *See id.*

[4] Although the prohibited weapons charge and the six aggravated assault charges were filed under separate cause numbers in the trial court, each of the procedural dates are parallel for both cause numbers, and the trial court, upon agreement between Appellant and the State, granted a motion of joinder prior to trial so that both causes would be tried before the same jury.

4

pro se motion to dismiss on November 7, 2007, alleging a denial of his speedy

trial right. The trial court heard this motion on the same date.

Appellant was the only person to testify at the hearing. The following

colloquy took place between Appellant and his trial counsel:

[DEFENSE COUNSEL]: And you were arrested for these charges in December of 2005?

[Appellant]: Yes.

Q. And have you been continuously in custody since that time up until now?

A. Yes.

Q. And during that -- you have cause to be filed -- actually, it's a motion prepared by you, asking the Court to dismiss this cause or these causes for denial of speedy trial;[5] is that correct?

A. Yes.

Q. During that period of time that this case has been pending, have you or do you have any concerns or problems that you think would effect [sic] your defense as far as the delay in the trial?

A. Yes, of course. Just like the first witness, the trained, paid professional couldn't recall because it was over two years ago. That was his statement, Bohannon, that was sitting here before me yesterday.

---

[5] Appellant's motion for dismissal filed on November 7, 2007, is the only motion specifically mentioning his speedy trial right. The hearing was conducted to address this motion. Both of the colloquies duplicated in this opinion contain the entirety of Appellant's testimony at this hearing.

5

Q.      Well, the lapse of time certainly would effect [sic] memory, I would suppose.  Is that a concern?

A.      Oh, very much so.  And whatever --

Q.      Let me ask another question.  And as far as the delay is concerned, memories do change as far as the facts or recollections are concerned?

A.      Oh, yes.  And people move.  You can't get ahold of anybody.  After two years, you don't know the addresses, phone numbers.

Q.      Okay.  Is there any particular witness that you had wanted to be present here in trial that you were unable to bring to the Court?

A.      Mr. Rhodes, but I wouldn't know -- have any idea where he lives now.

Q.      Okay.  Can you think of any other difficulty that the delay has caused you as far as your defense is concerned?

A.      It's been just so long that -- to get everything together.  And, like I say, memories and, of course, the district attorney has had two years with a law library and all of the things he has access to where I have -- and haven't been able to read a newspaper.

Q.      Okay.  Well, let me ask it this way:  Is there anything else you wanted to present to the Court in regard to this motion?

A.      To -- just the fact that everywhere else in the United States, it is a pretty legitimate right that we have for a speedy trial.  Every other state in the union would consider it a fundamental right.

Q.      Okay.  Is that all?

A.      Yeah.

Shortly after, the following colloquy took place during the State's cross-examination:

6

[Prosecutor]: Mr. Christmas, as far as Mr. Rhodes goes, is this a person who was a witness to the events that occurred that evening?

A. No. He was a friend of Mr. Clark's and talking with Mr. Clark had information that wasn't in the statement.

Q. Okay. Have you attempted to locate Mr. Rhodes through your attorney or any other agency? In other words, have you made attempts to subpoena him or locate his whereabouts?

A. Other than the name, I had no other way of -- I believe I gave my attorney the name quite a while back in a letter that was, like, after -- I mean, he wasn't my lawyer until seven months after I was incarcerated sometime back. It's hard to recall. It's been a long time in the cage.

Q. So as far as you know, that's all you have done to try to locate him since. Do you know when he moved?

A. I mean, you've got to understand, I've been two years right across the street without a window or a phone or access to --

Q. That's nonresponsive. Do you know when he moved?

A. I have no clue.

Q. That's the question.

A. I have no way of knowing.

Q. Now, the statement you've mentioned or these statements that he made would be related to you or to someone else?

A. He related to me. He was incarcerated across the street for a couple of months.

After Appellant's testimony, the trial court took judicial notice of the clerk's record for each cause of action. The trial court also took judicial notice

7

that Appellant had been appointed counsel on June 27, 2006, and that Appellant had agreed to reset the September 25, 2006 pretrial date to November 27, 2006. The trial court denied Appellant's motion to dismiss and the jury trial proceeded.

Two days later, the jury found Appellant guilty of all counts in both indictments. The jury assessed punishment at two years' incarceration for the weapons charge and for each of counts one and two of the assault charges. The jury recommenced that these sentences be suspended and that Appellant be placed on community supervision. The jury assessed two years' incarceration on each of the remaining four assault counts without recommendation.

Based on the jury's verdict, the trial court ordered that Appellant serve two years' confinement for counts three through six—the aggravated assault charges—with the sentences to run concurrently. The trial court noted that the judgment would reflect 695 days credit to Appellant's sentence on each of these counts.[6] The trial court suspended the sentences for the weapons charge and for counts one and two of the assault charge and placed Appellant on community supervision for a total of five years. This appeal followed.

---

[6] The trial court noted that at the time of sentencing, Appellant still had roughly 35 days remaining on each of his two-year sentences.

8

### III.  DISCUSSION

In two points, Appellant argues that the trial court erred by denying his motion to dismiss. Citing both the United States and Texas Constitutions, Appellant specifically complains that his right to a speedy trial was violated.

### A.    The Right to a Speedy Trial

The Sixth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution guarantee an accused the right to a speedy trial.  *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10*; see also Zamorano v. State*, 84 S.W.3d 643, 647 (Tex. Crim. App. 2002); *Orand v. State*, 254 S.W.3d 560, 565 (Tex. App.—Fort Worth 2008, pet. ref'd).  Texas courts analyze claims of a denial of this right, both under the federal and state constitutions, the same. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).  The right attaches once a person becomes an "accused," that is, once one is arrested or charged.  *United States v. Marion*, 404 U.S. 307, 321, 92 S. Ct. 455, 461 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy-trial provision of the Sixth Amendment.").

Supreme Court precedent requires state courts to analyze federal constitutional speedy trial claims "on an ad hoc basis" by weighing and then

9

balancing the four *Barker v. Wingo* factors: 1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused. 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *Orand*, 254 S.W.3d at 565. While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *See Barker*, 407 U.S. at 531, 92 S. Ct. at 2193; *see also Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973) (stating that "if an accused made a prima facie showing of prejudice, the State must carry the obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay"). The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir.1993) (citing *Doggett v. United States*, 505 U.S. 647, 657, 112 S. Ct. 2686, 2695 (1992)). Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280–81 (Tex. Crim. App. 2008).

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2693

10

n.1 (1992). There is no set time element that triggers the analysis, but the court of criminal appeals has held that a delay of four months is not sufficient while a seventeen-month delay is. *Pete v. State*, 501 S.W.2d 683, 687 (Tex. Crim. App. 1973) ("Appellant herein was tried [for rape] approximately four months after he was bench warranted from the Texas Department of Corrections. It is our opinion that this short period of time could in no way be construed as 'presumptively prejudicial.'"); *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983) ("Although there is no precise length of delay which irrefutably constitutes a violation of the right to a speedy trial in all cases, . . . a seventeen month delay is sufficient to raise the issue."); *see also Doggett*, 505 U.S. at 651, 652 n. 1, 112 S. Ct. at 2693 n.1 (noting that courts have generally found post-accusation delay "presumptively prejudicial at least as it approaches one year"). Once the *Barker* test is triggered, courts must analyze the speedy trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192). No one factor is either a necessary or sufficient condition to the finding of a deprivation of the speedy trial right. *Id*. Instead, the four factors are related and must be considered together along with any other relevant circumstances. *Barker*, 407 U.S. at

11

530, 92 S. Ct. at 2192. As no factor possesses "talismanic qualities," courts must engage "in a difficult and sensitive balancing process" in each individual case. *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 533, 92 S. Ct. at 2192).

Dismissal of the charging instrument with prejudice is mandated only upon a finding that an accused's speedy trial right was actually violated. *See Strunk v. United States*, 412 U.S. 434, 440, 93 S. Ct. 2260, 2271 (1973). Because dismissal of the charges is a radical remedy, a wooden application of the *Barker* factors would infringe upon the societal interest in trying people accused of crime, rather than granting them immunization because of legal error. *Cantu*, 253 S.W.3d at 281. Thus, courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *See Barker*, 407 U.S. at 534–35, 92 S. Ct. at 2192 (rejecting defendant's claim of a speedy trial violation despite a five-year delay when the record strongly indicated that the defendant did not actually want a speedy trial). The constitutional right is that of a speedy trial, not dismissal of the charges. *Cantu*, 253 S.W.3d at 281.

The amorphous quality of the right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived.

12

*Id*. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. *Id*. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial, but it is the only possible remedy. *Id*.

### B.    Standard of Review

In reviewing the trial court's ruling on an appellant's speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components, and a de novo standard for the legal components. *Zamorano*, 84 S.W.3d at 648.  Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question. *Cantu*, 253 S.W.3d at 282.

Under this standard, we defer not only to a trial judge's resolution of disputed facts, but also to the trial judge's right to draw reasonable inferences from those facts. *Id.* at 281.  In assessing the evidence at a speedy trial hearing, the trial judge may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted. *Id.* The trial judge may disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. *Id.* And all of the evidence must be viewed in the light most favorable to the trial judge's ultimate ruling. *Id.* Because Appellant lost in the trial court on his speedy trial claim, we

13

presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports. *See id.* at 282.

### C. Analysis of the *Barker* Factors

#### 1. Length of Delay

The length of delay is a "triggering mechanism" for analysis of the other *Barker* factors. *Barker*, 407 U.S. at 530–32, 92 S. Ct. at 2192–93; *Orand*, 254 S.W.3d at 566. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other [*Barker*] factors that go into the balance." *Barker*, 407 U.S. at 530–32, 92 S. Ct. at 2192–93. Presumptive prejudice does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry. *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; *Munoz*, 991 S.W.2d at 821–22. This *Barker* factor "is actually a double [i]nquiry." *Doggett*, 505 U.S. at 651, 112 S. Ct. at 2690. The first inquiry is whether the delay triggers the *Barker* analysis. *Id.* If the analysis is triggered, the second enquiry "consider[s], as one factor . . . the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.*

The State concedes that the almost twenty-three month delay between Appellant's arrest and his eventual trial is sufficient to trigger the *Barker* analysis. We agree. We also conclude that the length in delay, even though in small part attributable to Appellant when he agreed to a continuance, weighs against the State.

### 2. Reasons for the Delay

Under *Barker*, "different weights should be assigned to different reasons" for the delay. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. This factor seeks to ensure that courts not simply concentrate on the sheer passage of time without taking into account the reasons underlying the delay. *See, e.g., Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002). The inquiry into causation involves a sliding scale: deliberately dilatory tactics must be weighed more heavily against the State than periods of delay resulting from negligence. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Furthermore, valid reasons for delay should not be weighed against the State. *See Munoz*, 991 S.W.2d at 824. And delay which is attributable in whole or in part to the defendant can weigh against the defendant and may even constitute a waiver of a speedy trial claim. *See Barker*, 407 U.S. at 529, 92 S. Ct. at 2191–92 (noting that delay attributable solely to defendant "may be given effect under standard waiver doctrine"); *see also Dickey v. Florida*, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574 (1970)

15

(Brennan, J., concurring) (reasoning that a defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility"); *United States v. Anderson*, 902 F.2d 1105, 1110 (2nd Cir.) (holding that there was no speedy trial violation when, among other things, defense counsel agreed to delays and continuances for purposes of plea negotiations), *cert. denied*, 498 U.S. 867 (1990).

Like the first factor, the State also concedes that the record does not provide any valid reason for the delay of Appellant's trial. While we agree that this factor weighs against the State, the record does demonstrate that Appellant agreed to at least one continuance. Further, there is a lack of any evidence that the State deliberately used dilatory tactics. Even though we conclude that this factor weighs against the State, it does not weigh heavily against the State.

### 3. Assertion of the Right

We next consider the extent to which Appellant affirmatively sought a speedy trial. *Barker*, 407 U.S. at 531–32, 92 S. Ct. at 2192. The nature of the speedy trial right makes "it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants." *Id.* at 527, 92 S. Ct. at 2193. But even though it is the State's duty to bring the

16

defendant to trial, it is the defendant's duty to assert the right to a speedy trial. *Id*. at 527–28, 92 S. Ct. at 2193 ("We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.").

Whether and how a defendant asserts this right is closely related to the other three factors because the strength of the defendant's efforts will be shaped by them. *Id*. at 531, 92 S. Ct. at 2196. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* Thus, the defendant's assertion of the right to a speedy trial—or the failure to assert it—is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id*. at 531–32, 92 S. Ct. at 2196. Filing for a dismissal instead of a speedy trial generally weakens a speedy trial claim because it shows a desire to have no trial instead of a speedy one. *Cantu*, 253 S.W.3d at 283. If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, the defendant should provide cogent reasons for this failure. *Id.; see also Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.).

Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, only a dismissal. *Barker*, 407 U.S.

17

at 534–36, 92 S. Ct. at 2192–95 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial."); *see also United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) ("[T]he point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is experiencing."); *Harris*, 827 S.W.2d at 957 ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial.").

In *Palmer*, the Fifth Circuit held that because the defendant "first asserted his right thirty months after his arrest, which was one month after he first received notification of his indictment, and he complained at that time only of the 22-month pre-indictment delay," his "silence during the entire pre-indictment period work[ed] against him because it suggest[ed] that any hardships he suffered were either minimal or caused by other factors." *Palmer*, 537 F.2d at 1288.

Likewise, in this case, Appellant did not assert his speedy trial right until after trial had begun. And when Appellant did assert his right, it was in the form of a motion to dismiss. In fact, Appellant filed multiple pro se motions to dismiss during his pretrial incarceration, despite having a court-appointed

18

attorney. The trial court could have reasonably inferred that Appellant was not interested in a speedy trial, but rather that he was interested only in a dismissal of the charges against him. We conclude, as the trial court must have, that this factor weighs against Appellant's claim that his speedy trial right was violated.

### 4. Prejudice

Because "pretrial delay is often both inevitable and wholly justifiable," the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett*, 505 U.S. at 656, 112 S. Ct. at 2692. When a court analyzes the prejudice to the defendant, it must do so in light of the defendant's interests that the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility that the accused's defense will be impaired. *See Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (citing *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193). Of these interests, the third is the most important because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; *Doggett*, 505 U.S. at 654, 112 S. Ct. at 2692; *Dragoo*, 96 S.W.3d at 315.

Appellant argues that this factor should weigh in favor of finding that his speedy trial right was violated because his pretrial incarceration was oppressive, he suffered "anxiety and concern" about the preparation of his defense, and he was unable to locate a witness in preparing for his defense due to his incarceration. We disagree.

Appellant's incarceration may have been oppressive if he had not received credit on his sentence for time served or if he had ultimately been found innocent of the charges, but Appellant received credit on his sentence for his pre-trial incarceration. *See Starks v. State*, 266 S.W.3d 605, 612 (Tex. App.—El Paso 2008, no pet.) (holding that appellant's twenty-five-month pretrial incarceration was not oppressive when appellant received credit on his sentence for time served and appellant ultimately pleaded guilty to charges); *see also United States v. Casas*, 425 F.3d 23, 34–35 (1st Cir. 2005) (holding defendants' allegations of anxiety and concern during forty-one month period of pretrial incarceration insufficient to show violation of speedy trial right when time served was credited against sentences they received upon conviction); *Gray v. King*, 724 F.2d 1199, 1204 (5th Cir. 1984) (holding that ten-month incarceration was not oppressive pretrial incarceration when defendant received credit for pretrial incarceration).

As to Appellant's claim of having suffered from anxiety, any criminal charge is certain to bring a level of anxiety with it; however, Appellant failed to introduce any evidence that the anxiety he suffered either was abnormal or caused his case prejudice. *See Goodrum v. Quarterman*, 547 F.3d 249, 263 (5th Cir. 2008) ("[G]eneralized expressions of anxiety and concern amount to little more than a nominal showing of prejudice.").

Finally, although Appellant mentions a witness he was unable to locate due to his incarceration, Appellant did not testify how that witness's testimony would be relevant to his case. Appellant admitted that the witness was not a witness to the events and said only that the witness had "information" about another witness's statement, but did not elaborate on what the information was or what specific statement he was referring to. When asked whether he had attempted to locate this alleged missing witness, Appellant ultimately replied, "[I]t's hard to recall. It's been a long time in the cage."

The trial court was entitled to disbelieve all or part of Appellant's testimony concerning his attempts to locate this witness. *See Cantu*, 253 S.W.3d at 281. The trial court was also entitled to draw the reasonable inference that Appellant's lack of specificity concerning this alleged witness's relevance to Appellant's defense undermined the importance of the witness's testimony. The trial court could have reasonably concluded that Appellant had

21

failed to demonstrate that any witnesses forgot any details or otherwise became unavailable as a result of the delay or that Appellant himself could not recall the events because of the length of the delay. *See Starks*, 266 S.W.3d at 613. In short, Appellant has not demonstrated any personal or defense prejudice. The fourth factor favors a finding that Appellant's right to a speedy trial was not violated.

### 5. Balancing the Factors

Having addressed the *Barker* factors, we must now balance them. In balancing these factors, we find the case of *Meyer v. State* from our sister court in Waco instructive. *See Meyer v. State*, 27 S.W.3d 644, 651 (Tex. App.—Waco 2000, pet. ref'd), *abrogated on other grounds by Robinson v. State,* 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Meyer was incarcerated during a twenty-three month delay between his arrest and trial, the State gave no valid reason for the delay, and Meyer timely and consistently asserted his right to a speedy trial. *Id.* at 649–51. The court held that although Meyer had suffered some oppressive pretrial incarceration and undue anxiety, he did not make even a prima facie showing that his defense had been impaired by the passage of time resulting from the delay in his trial. Balancing the *Barker*

22

factors, the Waco court of appeals concluded that Meyer was not denied his speedy trial right. *Id*. at 651.[7]

In this case, like in *Meyer*, Appellant was incarcerated during a twenty-three month delay between his arrest and trial and the State has given no valid reason for the delay. Also, like in *Meyer*, Appellant has not even made a prima facie showing that his defense was impaired by the passage of time resulting from the delay in his trial. But unlike in *Meyer*, Appellant in this case did not timely and consistently assert his right to a speedy trial, rather he only asserted the right after trial had begun and then in the form of a motion to dismiss. He had also previously filed his own motions to dismiss despite having court-appointed counsel—indicating that he was not interested in a speedy trial, but rather interested in not having a trial at all.

In conclusion, weighing in favor of finding that Appellant's speedy trial right was violated are the facts that there was a twenty-three month delay between his arrest and trial and the State has given no valid reason for the

---

[7] It it is worth noting that Meyer sought a habeas claim in federal court. *Meyer v. Dretke*, 291 F. Supp.2d 471, 472 (N.D. Tex 2003), *aff'd* 104 Fed. Appx. 956 (5th Cir. 2004), *cert. denied* 544 U.S. 923 (2005). The federal district court for the Northern District of Texas denied habeas relief, holding that the Waco court of appeals's holding was neither "contrary to, [nor] an unreasonable application of, clearly established federal law as determined by the Supreme Court." *Id.* at 479.

delay.  Weighing against finding a violation of Appellant's speedy trial right is the fact that he failed to assert his right until more than twenty-three months after his arrest, and then, he asserted that right in the form of a motion to dismiss and after his trial had begun.  Further, there is a lack of any substantial personal or defense prejudice resulting from the delay and Appellant received credit on his sentence for time served.  We hold that the weight of these factors, balanced together, supports the trial judge's ruling to deny Appellant's motion to dismiss and that there was no violation of his right to a speedy trial. We overrule Appellant's two points.

## IV.  CONCLUSION

Having overruled Appellant's two points, we affirm the trial court's judgment.

DIXON W. HOLMAN
JUSTICE

PANEL: GARDNER and WALKER, JJ.; DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

WALKER, J. filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 5, 2009

24



# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-004-CR**
**NO. 2-08-005-CR**

JOHN ALFRED CHRISTMAS                                    APPELLANT

V.

THE STATE OF TEXAS                                           STATE

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

## CONCURRING MEMORANDUM OPINION[1]

------------

I respectfully concur with the majority's disposition of this appeal. I write separately to express some disagreement with the majority's analysis of the second two *Barker*[2] speedy trial factors. Ultimately, however, existing case law mandates the result reached by the majority.

---

[1] *See* Tex. R. App. P. 47.4.

[2] *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972).

The facts of the case are correctly and adequately set forth by the majority, except the mostly additional facts that are set forth below as pertinent. As the majority points out, the State's attorney candidly conceded during oral argument that the first and second *Barker* factors—the length of the delay and the reasons for the delay—weigh in favor of Appellant. *See Barker*, 407 U.S. at 530, 92 S. Ct. at 2192.

Regarding the third *Barker* factor—the extent to which Appellant asserted his right to a speedy trial—I cannot agree with the majority's determination that Appellant did not assert his speedy trial right until after trial had begun. Majority Op. at 19. A review of the record shows that Appellant repeatedly attempted to cause his case to come to a head—whether by dismissal or disposition at trial. *See id.* Appellant sat in jail for six months before an indictment was returned against him or an attorney was appointed for him. On the day that the trial court appointed his attorney, the court said it would "see about appointing an attorney for you if you want to have one," to which Appellant replied, "Well, I've got to do something. I can't even get copies made. I have no access to the law library or anything. . . . So I'm kind of crippled here." Later in the same hearing, Appellant noted that an appointed attorney "would be better than I am doing."

The record shows that even after an attorney was appointed, Appellant was the one, rather than his attorney, to file a motion to dismiss,[3] claiming that the State failed to return an indictment within 180 days. *See* Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon 2006) (providing for dismissal of charges when defendant has been detained in custody without presentment of an indictment on or before the later of either the last day of the next term of court which is held after defendant's commitment or on or before the 180th day after the date of commitment). Although Appellant's motion to dismiss failed to use the magic words requesting a speedy trial, it is clear that Appellant was attempting to do something to force his case out of its stalemate.

---

[3] The same day that he filed his motion to dismiss, Appellant also filed a motion requesting that the court instruct the Montague County Sheriff's Department and jail staff to provide him access to confidential documents, legal tablets, ink pens, and the Montague County law library. Appellant explained in his motion that the jail administrator "repeatedly denied me access to the law library" and told Appellant "that copies and access to the law library are not requirements of the state jail commission." In his motion, Appellant noted that his court-appointed attorney was acting as co-counsel to Appellant. The record is silent regarding whether the court approved of this hybrid representation, but both of Appellant's handwritten motions to dismiss were relied upon by counsel at hearings on these motions and the trial court ruled on these motions. *See Robinson v. State*, 240 S.W.3d 919, 923 (Tex. Crim. App. 2007) (holding that trial court is free to disregard pro se motions of a defendant represented by counsel, but once a court chooses to rule on such motions, that those decisions are reviewable); *Webb v. State*, 533 S.W.2d 780, 784 (Tex. Crim. App. 1976) (holding that although a criminal defendant does not have the right to hybrid representation, a patient trial judge may permit it).

3

Appellant's efforts to move his case off dead center are further evidenced by the fact that two months after the hearing on Appellant's first motion to dismiss, he filed several handwritten motions for discovery—motions attempting to move the case forward. And on the day of trial, Appellant filed a second handwritten motion to dismiss, this time alleging a denial of his right to a speedy trial. When his attorney presented the motion to the court, he explained that Appellant brought it with him to court that day and that the State had not had a chance to review it. Appellant explained, "I just got – I have no access – until I got that copy of the constitution and stuff, I didn't know what to put in it."

Appellant does not bear the burden to bring himself to trial; that is the State's duty. *See Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008) (citing *Barker*, 407 U.S. at 527–28, 92 S. Ct. at 2190–91). Although Appellant does have the responsibility to assert his right to a speedy trial in some fashion, the right to a speedy trial is constitutionally guaranteed not only to the vigilant and the knowledgeable. *Id.*; *Orand v. State*, 254 S.W.3d 560, 568 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Barker*, 407 U.S. at 527 n.27, 92 S. Ct. at 2190 n.27). The record demonstrates that Appellant was not simply acquiescing to the delay while he was jailed for twenty-three months; Appellant sought access to the law library and to items necessary to

4

prepare a defense, and ultimately asserted, albeit in a motion to dismiss, his right to a speedy trial. *See Barker*, 407 U.S. at 527, 92 S. Ct. at 2190 (noting that it is impossible to pinpoint a precise time in the process when the defendant must assert his right to a speedy trial). These efforts by Appellant make analysis of the third *Barker* factor a much closer call than recognized by the majority. Nevertheless, existing case law simply precludes a determination that this factor weighs in Appellant's favor. *See, e.g.*, *id.* at 517–19, 533–35, 92 S. Ct. at 2185–87, 2193–94 (holding that filing of motion to dismiss indictment in response to "another motion for continuance" by government after over three-year delay was not assertion of speedy trial right); *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976) (holding that defendant's silence during twenty-two month pre-indictment period weighed against him when he asserted his right thirty months after arrest and one month after notified of his indictment); *Cantu*, 253 S.W.3d at 277, 286 (noting that appellant's tardiness in asserting his right weighed against him when he filed motion to dismiss less than two months after he was charged but over sixteen months after his arrest); *Dragoo v. State*, 96 S.W.3d 308, 315 (Tex. Crim. App. 2003) (holding that defendant's failure to assert speedy-trial violation for three and a half years, until just before trial began, although represented by counsel and absent any assertion that counsel was ineffective, caused third

5

*Barker* factor to weigh against him); *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) ("[A] defendant's motivation in asking for dismissal rather than a prompt trial is clearly relevant, and may sometimes attenuate the strength of his claim."); *Parkerson v. State*, 942 S.W.2d 789, 791 (Tex. App.—Fort Worth 1997, no pet.) (holding that appellant's request for dismissal, rather than speedy trial, weakened his speedy-trial claim).

Regarding the fourth *Barker* factor, "prejudice," Appellant suffered pretrial incarceration in an uncomplicated case for twenty-three months; six months passed before Appellant was indicted and before counsel was appointed for him. *See Barker*, 407 U.S. at 531–32, 92 S. Ct. at 2192–93. The majority summarily concludes that this pretrial incarceration was not oppressive because Appellant received credit for time served. Maj. Op. at 20. Receiving credit retroactively for time served, however, cannot completely undo or cure oppressive pretrial incarceration. *See State v. Munoz*, 991 S.W.2d 818, 828 (Tex. Crim. App. 1999) (recognizing that "[w]hat is dispositive of 'this [oppressive pretrial incarceration] consideration' is that [Appellant] was incarcerated during the entire [twenty-three]-month delay"); *see also Barker*, 407 U.S. at 532–33, 92 S. Ct. at 2193 ("The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no

6

recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.").

The prejudice to Appellant is also somewhat self-evident from the nature of the charges against him; individuals engaged in and witnesses to domestic disputes escalating to assaults sometimes live more transient lifestyles. After twenty-three months of pretrial incarceration, Appellant testified that "people move. You can't get ahold [sic] of anybody. After two years, you don't know the addresses, phone numbers." Appellant also testified that he would have called a Mr. Rhodes to testify to "information that wasn't in the statement" if he knew how to contact him. Ultimately, Appellant called only two witnesses at trial—himself and his girlfriend at the time of the incident. Under the fourth *Barker* factor, affirmative evidence of prejudice is not necessary and the presumption of prejudice grows and intensifies over time. *See Orand*, 254 S.W.3d at 569 (noting that "time's erosion of exculpatory evidence and testimony can rarely be shown").

Existing case law, however, mandates that after a two-year delay Appellant must establish more than speculative prejudice to his defense. *See, e.g.*, *Cantu*, 253 S.W.3d at 277 (noting in its prejudice analysis that "there was no evidence that appellant lost his job or had his work schedule disrupted");

7

*Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) ("[A]ppellant offered no evidence to the trial court that the delay had caused him any unusual anxiety or concern, i.e., any anxiety or concern beyond the level normally associated with being charged with [the] crime."); *Burgett v. State*, No. 02-05-00377-CR, 2006 WL 3525434, at *4 (Tex. App.—Fort Worth Apr. 25, 2007, pet. ref'd) (mem. op., not designated for publication) (finding no connection between appellant's lack of access to the law library with his claim of prejudice); *State v. Wray*, No. 05-01-01799-CR, 2002 WL 1763567, at *4 (Tex. App.—Dallas July 31, 2002, pet. dism'd) (not designated for publication) (holding delay of two and one-half years was not presumptively prejudicial); *Meyer v. State*, 27 S.W.3d 644, 650 (Tex. App.—Waco 2000, pet. ref'd) (holding that defendant's claim of prejudice based on missing witnesses did not support prejudice finding because defendant, who was incarcerated during the entire twenty-three month delay, failed to address both materiality and relevance of the missing witnesses and his efforts to find them), *abrogated on other grounds by Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) . Here Appellant did not do so.

For the reasons stated above, I respectfully concur in the majority's opinion.

SUE WALKER
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 5, 2009

8